**Don Kenneth KELLER, Jr., Appellant,**

**v.**

**Russell JUDD, Appellee.**

**No. 04–83–00096–CV.**

Court of Appeals of Texas,
San Antonio.

April 18, 1984.

---

Daniel R. Rutherford, San Antonio, for appellant.

Robin V. Dwyer, Dibrell, Dotson, Dibrell & Dibrell, San Antonio, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

The trial court rendered judgment for appellee in his suit against appellant for breach of warranty and misrepresentation in the sale of an automobile which was later confiscated by the State of Texas as a stolen vehicle.

Appellant's points of error deal with two issues. First, appellant claims three statutes are unconstitutional when applied in connection with each other: the Texas Certificate of Title Act, TEX.REV.CIV.STAT. ANN. art. 6687–1 (Vernon 1977 and Vernon Supp.1984); the breach of warranty provisions of the Texas Business and Commerce Code, TEX.BUS. & COM.CODE ANN. § 2.312 (Vernon 1968); and the Texas Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. §§ 17.50 and 17.50A (Vernon Supp.1984). Second, appellant cites as error the trial court's refusal to permit joinder of the State of Texas as a third-party defendant and to abolish governmental immunity. We affirm.

The facts of this case are as follows. Around September, 1980, while at a paint-and-body shop checking into work being done for him, appellant encountered one Jerome Crayton. Crayton offered to sell a 1980 Bill Blass Lincoln Continental for $15,000. Appellant said that was too much but agreed to buy when Crayton lowered his price to $10,000. Crayton said his brother-in-law needed to sell the car and that it had been damaged. Subsequently, Crayton handed appellant a Texas certificate of title already signed by Crayton's alleged brother-in-law, Larry Lawson. Ap-

pellant arranged for a bank loan, and he and the bank officer checked the vehicle identification number against the number listed on the title certificate. Appellant cashed the bank's check and gave Crayton $10,000.

Three or four weeks later, appellant sold the car to appellee. Appellant signed the certificate of title and appellee paid $10,358 to retire appellant's bank note plus $441.12 to appellant as equity. Appellant admitted representing to appellee that he was the owner of the car. When appellee applied for a certificate of title, the Texas Highway Department had by then learned that the Michigan certificate accompanying the first application for title was counterfeit. A Texas Department of Public Safety investigator inspected the car and found the identification number had been altered in some, but not all, places on the car. The car was confiscated and later awarded to AAA of Michigan Insurance Company as a result of that insurer's intervention in *The State of Texas v. 1980 Lincoln, VIN #OY-89G649411.*

The present record does not include all the details on the car's title certificates. However, the Texas Department of Public Safety investigator testified the first title certificate was issued to Larry Lawson and was assigned on the back to appellant. The investigator did not know if Lawson or anyone had initially had the car physically inspected by a peace officer. The investigator did not say if a "quick title" certificate were involved, but he acknowledged "quick titles" are no longer available.[1]

Appellant feels it is unfair that he be subjected to breach of warranty and DTPA liability as a result of his reliance on a Texas certificate of title, yet the State, which erred in issuing that certificate, escapes liability because of sovereign immunity. Appellant argues that the Texas Highway Department under art. 6687–1 has assumed "sole responsibility for determining ownership of a motor vehicle" and that he was "forced, as a citizen of Texas, to act in accordance with the statute and rely upon the action of the Texas Highway Department."

Appellant misapprehends the Highway Department function and the purpose of art. 6687–1. The Highway Department is not and never claimed to be an insurer of the genuineness of the legal title of a vehicle. Article 6687–1 merely regulates transfer of title pursuant to the state interest in curtailing trafficking in stolen vehicles. TEX.REV.CIV.STAT.ANN. art. 6687–1, § 1. A certificate of title raises a presumption of ownership, but it is not conclusive evidence of ownership. *Villa v. Alvarado State Bank,* 611 S.W.2d 483, 485 (Tex.Civ.App.—Waco 1981, no writ). The State does not guarantee or warrant that the one named on the title certificate is the true owner. A thief can convey no title even if he possesses a certificate of title. *Chapman Motors, Inc. v. Taylor,* 506 S.W.2d 724, 726 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). Article 6687–1 does not blindfold buyers. A prudent buyer must

---

1. Nothing in the record indicates when or under what procedures the first Texas certificate of title was issued on the Lincoln. Article 6687–1, § 30 states the requirements for title for a motor vehicle last registered and titled in some other state or country. Section 30 was amended, effective June 6, 1979. Previous to the amendment, section 30(a) required the applicant to furnish the Highway Department agent with a certificate from a peace officer certifying that the officer had made a physical examination of the motor number and serial number, or the permanent identification number of the motor vehicle. (Vernon 1977). Section 30(a) as amended, requires the applicant to furnish a certificate specified by TEX.REV.CIV.STAT. ANN. art. 6701d, § 142A, namely, that a state-

appointed inspection station has recorded the permanent identification number of the vehicle on the certificate of inspection. Motor Vehicles—Certificates of Title—Inspections, ch. 312, §§ 1, 142A, 1979 Tex.Gen.Laws 716. Appellant complains of Highway Department error in issuing the title. However, appellant does not specify the nature of the error, e.g., whether the physical examination by a peace officer or inspection station was not made or whether it was made negligently; or whether some other Highway Department procedure was performed negligently or whether agents would have detected the Michigan certificate counterfeit if department rules at the time in question had required a longer interval between application for and issuance of the Texas certificate.

look to the whole context of a sale, not merely to the certificate. Likewise, a seller makes representations of ownership and warranties of good title based on his total knowledge, not merely the title certificates. Simply because the State mandates registration does not mean the State compels buyers and sellers to rely exclusively on title certificates as proof of ownership.

■ Appellant's arguments on the constitutionality of the statutes in question seem based on the application of these statutes in his particular case rather than on the statutes per se. Appellant alleges "confiscation of property after failure by the State of Texas to exercise due diligence." Appellant has not been deprived of property without due process.[2] Appellant's arguments suggest he was injured because some government agent erred in issuing a title certificate and because appellant believed that the certificate was conclusive, state-guaranteed evidence of ownership. On the one hand, appellant could have sued his seller, Crayton. Or, if his allegations of error fit the requirements of art. 6687–1, § 56 (Vernon 1977), he could sue designated agents on their bonds. *Doyle v. Harben,* 660 S.W.2d 586, 589 (Tex.App.—San Antonio 1983, no writ). To the extent appellant seeks to sue government agents except as provided for under § 56, appellant would have us abolish sovereign immunity. We decline to do so. Waiver of governmental immunity is a matter addressed to the legislature. *Lowe v. Texas Tech University,* 540 S.W.2d 297, 298 (Tex. 1976). The facts here show no exception to the rule that the government cannot be sued except by consent. On the other hand, appellant's misunderstanding about the legal significance of a certificate of title cannot be attributed to the State, its agents, or statutes. Appellant's points dealing with the constitutionality of art. 6687–1 and TEX.BUS. & COM.CODE

ANN. §§ 2.312, 17.50 and 17.50A are overruled.

■ Appellant contends the trial court's refusal of leave to file a cross-action against the State of Texas constitutes error. TEX.R.CIV.P. 38 (Vernon 1979).[3] Rules of Civil Procedure grant trial courts broad discretion in matters of joinder, and the trial court's denial of joinder will not be disturbed on appeal except for abuse of discretion. *Williamson v. Tucker,* 615 S.W.2d 881, 886–87 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Appellant has failed to show the trial court abused its discretion. Appellant's TEX.R.CIV.P. 38 motion presented two bases for joinder: (1) both action and cross-action involve common issues of fact and law in a dispute arising out of the same transaction and (2) the disputes cannot be correctly adjudicated without all parties being joined in one suit. The trial court could have found both bases deficient in merit. First, appellant's cross-action against the State faced the legal hurdles of res judicata (the judgment in *The State of Texas v. 1980 Lincoln, VIN # OY89G649411*) and sovereign immunity, and dealt with facts preceding appellant's transaction with appellee, namely, Highway Department error in issuing a certificate of title to Lawson. On the other hand, appellee's suit against appellant involved clear-cut legal issues of breach of warranty and misrepresentation and facts subsequent to the alleged Highway Department error. Second, appellee made no claim against the State, nor would judgment in this suit bar other action by appellant against the State. *See, e.g., Packer v. First Texas Saving Association of Dallas,* 567 S.W.2d 574, 574–75 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Southwest Bank & Trust Co. v. Executive Sportsman Association,* 477 S.W.2d 920, 930 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.). We find no abuse of discretion. Ap-

---

2. The judgment in *The State of Texas v. 1980 Lincoln, VIN # OY89G649411* recites that appellant "though having appeared earlier in this cause through his attorney and though having notice of said hearing did not appear."

3. TEX.R.CIV.P. 38 as amended effective April 1, 1984, removes the need to get leave of court to begin third-party action if the third-party petition is timely filed.

pellant's point of error relating to trial court refusal of permission to file his cross-action against the State is overruled.

The judgment of the trial court is affirmed.