**HARRIS COUNTY HOSPITAL DISTRICT, Petitioner,**

v.

**TOMBALL REGIONAL HOSPITAL, Respondent.**

No. 05–0986.

Supreme Court of Texas.

Argued Dec. 4, 2007.

Decided May 1, 2009.

Sandra D. Hachem, Harris County Sr. Asst. Atty., Michael A. Stafford, Harris

County Atty., and Glen Van Slyke, Asst. County Atty., for Petitioner.

Margaret A. Pollard and Randal L. Payne, Sullins Johnston Rohrbach & Magers, Houston, TX, for Respondent.

Justice JOHNSON delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, and Justice GREEN joined.

In this case we consider whether Harris County Hospital District is immune from suit by the Tomball Hospital Authority to recover medical expenses for hospital care the Hospital Authority rendered to indigent patients. We hold that the Legislature has not waived the district's immunity from suit either by specific statutory language or by implication from a constitutional and statutory framework.

## I. Background

Tomball Hospital Authority (THA) was created and organized pursuant to chapter 262 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ch. 262.[1] It owns and operates Tomball Regional Hospital (the hospital) in Harris County. From 2001 to 2002, the hospital provided medical care to certain indigent patients who were residents of the Harris County Hospital District (HCHD). THA sought payment from HCHD for the care it provided, but HCHD refused to pay. THA sued HCHD in district court, basing its claim on the Indigent Health Care and Treatment Act (IHCTA) and the Texas Constitution. In a plea to the jurisdiction and motion for dismissal and alternatively for summary judgment, HCHD asserted that (1) it had governmental immunity from suit; (2) county courts had exclusive jurisdiction over the matters; and (3) the Texas Department of Health had exclusive, original jurisdiction over the claim. THA responded by alleging that jurisdiction was proper in the district court and that Article IX, Section 4 of the Texas Constitution and Health and Safety Code sections 61.002(6), 61.0045, 61.060, and 281.056(a), which require a hospital district to provide and pay for indigent care, waived HCHD's governmental immunity.

The trial court granted HCHD's plea to the jurisdiction and motion to dismiss. In an opinion predating this Court's decision in *Tooke v. City of Mexia,* 197 S.W.3d 325 (Tex.2006), the court of appeals concluded that Health and Safety Code section 281.056(a) providing that boards of hospital districts like HCHD may "sue and be sued" waived HCHD's immunity from suit. 178 S.W.3d 244, 252–53. The court of appeals also determined that the Health and Safety Code did not vest exclusive, original jurisdiction in either the county court or the Texas Department of Health. *Id.* at 254–55. The court reversed and remanded the case. *Id.* at 256.

In this Court, HCHD challenges the court of appeals' holding that the "sue and be sued" language in section 281.056(a) waives its governmental immunity. THA argues the court of appeals is correct, but also contends that even if section 281.056(a) does not explicitly waive HCHD's immunity to suit, its immunity is waived by a framework of law that includes the Texas Constitution and the Health and Safety Code. Additionally, THA argues that upholding HCHD's claim that it retains immunity will lead to: (1) cities withholding taxes collected for hospital districts in order to offset debts owed by districts to the cities for indigent care resulting in suits against the cities to recover the withheld taxes; (2) bankruptcies

---

1. Further references to provisions of the Health and Safety Code will generally be by section numbers.

of cities and municipal hospital authorities; and (3) violations of Texas Constitution Article III, Section 52(a) by cities in that a public benefit does not result from expenditures of public funds benefitting indigent parties not entitled to care by the cities. Disagreeing with THA's positions, we reverse the judgment of the court of appeals and dismiss the case.

## II. Standard of Review

A party asserting governmental immunity to suit challenges the trial court's jurisdiction. *See State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007). A motion or plea asserting such immunity involves a question of law that we review de novo. *Id.* Further, THA's assertions require review of both Texas constitutional and statutory provisions which involve matters of law and are reviewed de novo. *See City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003); *Tex. Nat'l Guard Armory Bd. v. McCraw,* 132 Tex. 613, 126 S.W.2d 627, 634 (1939) (noting that the Constitution is the fundamental law of the State).

## III. Analysis

### A. Construction

In construing the Constitution, as in construing statutes, the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question. *Cox v. Robison,* 105 Tex. 426, 150 S.W. 1149, 1151 (1912). "We presume the language of the Constitution was carefully selected, and we interpret words as they are generally understood." *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148 (Tex.1995). We rely heavily on the literal text. *Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353, 355 (Tex.2000). However, we may consider such matters as the history of the legislation, *Harris v. City of Fort Worth,* 142 Tex. 600, 180 S.W.2d 131, 133 (1944), the conditions and

spirit of the times, the prevailing sentiments of the people, the evils intended to be remedied, and the good to be accomplished. *See Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.,* 600 S.W.2d 264, 267 (Tex.1980).

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *see also* Tex. Gov't Code § 312.005; *Am. Home Prods. Corp. v. Clark,* 38 S.W.3d 92, 95 (Tex.2000). We look first to the "plain and common meaning of the statute's words." *Gonzalez,* 82 S.W.3d at 327 (internal quotation marks omitted) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999)). We determine legislative intent from the statute as a whole and not from isolated portions. *Id.*

### B. Governmental Immunity

Governmental immunity protects political subdivisions of the State from lawsuits for damages. *See Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006). Hospital districts have such immunity. *See Martinez v. Val Verde County Hosp. Dist.,* 140 S.W.3d 370, 371 (Tex.2004). Governmental immunity, like the doctrine of sovereign immunity to which it is appurtenant, involves two issues: whether the State has consented to suit and whether the State has accepted liability. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003). Immunity from suit is jurisdictional and bars suit; immunity from liability is not jurisdictional and protects from judgments. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Immunity is waived only by clear and unambiguous language. *See* Tex. Gov't Code § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity

unless the waiver is effected by clear and unambiguous language."); *Tooke*, 197 S.W.3d at 328–29.

### C. "Sue and be sued"

▮ The board of managers of a hospital district "shall manage, control and administer the hospital or hospital system of the district." TEX. HEALTH & SAFETY CODE § 281.047. Section 281.056 is entitled "Authority to Sue and be Sued; Legal Representation" and provides that "[t]he board may sue and be sued." The court of appeals held that this language waived immunity from suit. 178 S.W.3d at 252–53. In its brief predating this Court's decision in *Tooke*, THA cites *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812, 813–14 (Tex. 1970), and *Tarrant County Hospital District v. Henry*, 52 S.W.3d 434, 448 (Tex. App.-Fort Worth 2001, no pet.), in support of the court of appeals' decision. HCHD discounts *Missouri Pacific* and *Henry* because they were decided before *Tooke*. We agree with HCHD.

▮ When an entity's organic statute provides that the entity may "sue and be sued," the phrase in and of itself does not mean that immunity to suit is waived. *Tooke*, 197 S.W.3d at 337. Reasonably construed, such language means that the entity has the capacity to sue and be sued in its own name, but whether the phrase reflects legislative intent to waive immunity must be determined from the language's context. *Id.* Thus, section 281.056(a) does not in and of itself waive HCHD's immunity. *See id.* at 334, 337. Nor does section 281.056(a)'s language indicate a waiver of HCHD's immunity when considered in context with the remainder of section 281.056 which specifies who will represent the district in civil proceedings. This section anticipates the district's involvement in civil proceedings of some nature at some

point, but it does not address immunity from suit. *See id.*

Likewise, the other sections of chapter 281 do not, in context, reflect legislative intent to waive immunity. For example, section 281.050 authorizes a district, in broad terms and subject to approval of the commissioners court, to construct, acquire, and maintain property and hospital facilities to provide services. Section 281.051 grants authority, again subject to approval of the commissioners court, to contract or cooperate with various governmental and private entities to fulfill a district's duties and to enter contracts to provide for medical care of certain classes of needy individuals. Section 281.055 authorizes districts to accept gifts and endowments to be held in trust and to administer them.

The context in which section 281.056(a) is found shows that the Legislature intended to invest districts with powers and authority necessary to conduct their business, subject in large part to approval of the county commissioners court. There is, however, no indication that by use of the "sue and be sued" language the Legislature clearly intended to waive districts' immunity from suit. We conclude that section 281.056(a) does not, either by itself or in context, clearly and unambiguously waive HCHD's immunity to suit.

Next, we turn to THA's claim that HCHD's-immunity is waived by the framework of law created by the Texas Constitution and certain sections of the Health and Safety Code.

### D. Constitutional Provisions

▮ Article IX, Section 4 of the Texas Constitution was proposed and adopted as an amendment in 1954. It provides that if a hospital district is legislatively authorized and created, "such Hospital District shall assume full responsibility for providing medical and hospital care to needy

inhabitants of the county and thereafter such county and cities therein shall not levy any other tax for hospital purposes." *Id.* At the time the amendment was proposed, city-county hospitals were supported by both city and county taxes. The amendment was meant to address the issue of city residents being taxed by both cities and counties to support the hospitals, while non-city residents paid only county taxes. *Dallas' Stake Big in Hospital Vote,* DALLAS MORNING NEWS, Oct. 24, 1954, at pt. VII, p. 6. At that time, the common-law doctrine of sovereign immunity that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent" had been established in Texas for over one hundred years. *See Tooke,* 197 S.W.3d at 331 (internal quotation marks omitted) (quoting *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847)). The constitutional language as it was proposed and adopted did not address waiver of a hospital district's immunity. The constitutional language bears on a hospital district's *liability* for providing care, but it does not address the method by which that liability may be enforced; that is, whether a hospital district is or is not immune from suit to establish and secure a judgment for the amount of whatever its liability may be. We need go no further than the plain language of the Constitution to conclude it does not provide that suits for damages may be filed against a hospital district. *See Bouillion,* 896 S.W.2d at 148.[2] We hold that article IX, section 4 does not waive a district's governmental immunity from suit.

### E. Statutory Provisions

 Looking next to the statutes involved, we note that it is more difficult to determine legislative consent to suit

against an entity when language specifying that "immunity is waived" is absent from the provisions in question. *Taylor,* 106 S.W.3d at 697. We have developed aids to help analyze statutes for legislative consent to suit: (1) whether the statutory provisions, even if not a model of clarity, waive immunity without doubt; (2) ambiguity as to waiver is resolved in favor of retaining immunity; (3) immunity is waived if the Legislature requires that the entity be joined in a lawsuit even though the entity would otherwise be immune from suit; and (4) whether the Legislature provided an objective limitation on the governmental entity's potential liability. *See id.* at 697–98. We have also considered whether the statutory provisions would serve any purpose absent a waiver of immunity. *See, e.g., id.* at 700; *Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 643 (Tex.2004); *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 6 (Tex.2000).

Pursuant to the authority granted by Texas Constitution Article IX, Section 4, section 281.002 of the Health and Safety Code statutorily authorizes creation of hospital districts in counties with populations over 190,000. Section 281.046 provides that if such a district is created, then "[b]eginning on the date on which taxes are collected for the district, the district assumes full responsibility for furnishing medical and hospital care for indigent and needy persons residing in the district." Section 281.046's language parallels that of the Constitution insofar as mandating that once a district begins collecting taxes for purposes of providing health care to indigents, then it has the responsibility to provide such care. Our analysis of the similar constitutional language applies to

---

**2.** Even if we were to go behind the plain language of the Constitution, the available legislative history and records of public dis-

cussions about the proposed amendment do not show that any consideration was given to the subject of immunity from suit.

section 281.046 which is, for purposes of the issue before us, the same as the language in article IX, section 4. The statutory language might impact or even foreclose the question of whether a hospital district is *liable* for allowable expenses, an issue not before us, but the statute is silent as to waiver of a district's immunity from suits such as the one THA has brought. And section 281.046 neither requires the district to be joined in some type of suit nor does it set an objective limitation on the district's potential liability. *See Taylor,* 106 S.W.3d at 697–98. In sum, section 281.046 does not waive HCHD's immunity from suit.

 We next consider THA's argument that HCHD's immunity is waived by Section 61.002(6) of the IHCTA. Section 61.002 contains definitions applicable to that chapter:

(6) "Governmental entity" includes a county, municipality, or other political subdivision of the state, but does not include a hospital district or hospital authority.

(7) "Hospital district" means a hospital district created under the authority of Article IX, Sections 4–11, of the Texas Constitution.

THA claims that because a hospital district is excluded from the definition of "governmental entity," immunity does not apply to hospital districts for claims under the IHCTA because only "governmental entities" are protected by the doctrine of governmental immunity. A fair and reasonable reading of the statute yields the conclusion that where the term "governmental entity" is *used* in the chapter, a hospital district is not included. If the chapter said that notwithstanding any provision of the chapter that might be interpreted otherwise, immunity is retained for governmental entities, then THA's argument would carry greater weight. But the chapter nowhere addresses immunity of

"governmental entities." Applying the interpretation aids of *Taylor,* we conclude that section 61.002(6)'s definition of "governmental entity" which excludes HCHD, does not waive HCHD's immunity. *See Taylor,* 106 S.W.3d at 697–98.

Section 61.0045 is entitled "Information Necessary to Determine Eligibility." Section 61.0045(a) allows medical service providers to require patients to furnish and authorize the release of information necessary for determination that the patient is an eligible resident of the service area so the provider may submit a claim to the "county, hospital district, or public hospital that is liable for payment for the service." Section 61.0045(b) provides:

A county, hospital district, or public hospital that receives information obtained under Subsection (a) *shall* use the information to determine whether the patient to whom services were provided is an eligible resident of the service area of the county, hospital district or public hospital and, if so, *shall pay* the claim made by the provider in accordance with this chapter.

(Emphasis added). THA argues that the use of "shall" mandates payment by HCHD, and if the language is not interpreted as waiving HCHD's immunity from suit, then the statute's use of mandatory language is of no effect. THA urges that failing to interpret section 61.0045 as waiving immunity would violate our principles of statutory construction and the Legislature's mandate that in interpreting statutes it is presumed the entire statute is intended to be effective and that a just and reasonable result is intended. *See* TEX. GOV'T CODE § 311.021(2),(3). We disagree with THA. Like our discussion of sections 281.046 and 61.002(6), the analysis for legislative consent to suit applies here as well: (1) the statutory provisions do not waive the district's immunity from suit without

doubt; (2) to the extent the statute creates some ambiguity as to waiver of immunity from suit, we resolve the doubt in favor of retaining immunity; (3) neither section 61.0045 nor chapter 61 requires a hospital district to be joined as a party to some type of lawsuit; and (4) neither section 61.0045 nor chapter 61 places an objective limitation on any potential liability. *See Taylor*, 106 S.W.3d at 697–98.

Section 61.0045 requires a hospital district to pay claims by a provider for services rendered to an eligible resident of the district. But as with Article IX, Section 4 of the Constitution and section 281.046, section 61.0045 is directed toward the question of whether a hospital district is *liable* for allowable expenses; but the statute is silent as to waiver of a district's immunity from *suit* asserting a right to reimbursement by parties such as THA. Thus, section 61.0045 does not waive HCHD's immunity from suit.

Section 61.060 is entitled "Payment for Services." Section 61.060(b) provides that "[a] hospital district is liable for health care services as provided by the Texas Constitution and the statute creating the district." Section 61.060 also addresses a hospital district's liability for payment and not its immunity from suit. THA's urging that section 61.060 waives HCHD's immunity from suit is misplaced for the reasons we have expressed above as to sections 281.046, 61.002(6), and 61.0045.

## F. Additional Considerations

Next we consider THA's assertion that the IHCTA is part of a framework of law that waives HCHD's immunity from suit. THA contends that the provisions of the IHCTA, when considered with the previously discussed language of Article IX, Section 4 of the Constitution and section 281.046(a) (specifying that a hospital district "assumes full responsibility for furnishing medical and hospital care for indigent and needy persons residing in the district"), yield the inescapable conclusion that the Legislature intended for hospital districts' immunity from suit to be waived. Districts could then be required to pay claims for which they are statutorily liable and for which they have received tax money. THA posits that if the law were otherwise, hospital districts could collect taxes to pay for indigent care, yet deny a treating entity's requests for payment with impunity, thereby transferring the cost of the care to entities such as THA that do not have taxing authority. *See* TEX. HEALTH & SAFETY CODE §§ 262.003(e), 281.045(a) (providing that a hospital authority does not have taxing power). THA warns that if we hold the Legislature has not waived HCHD's immunity from suit, then (1) cities will begin withholding taxes collected for hospital districts and offset those collections against alleged "debts" owed by districts to the cities for indigent care, resulting in numerous suits by districts to recover the taxes withheld; (2) cities and municipal hospital authorities will be bankrupted by paying for indigent medical care; and (3) cities and municipal hospital districts, by expending funds for care of ineligible indigents will be in violation of Texas Constitution Article III, Section 52(a). Despite THA's construct and warnings of dire results if HCHD prevails here, we disagree with THA that the statutory framework or predicted negative effects of sustaining HCHD's claim of immunity to suit justifies our reading clear and unambiguous waiver language into the statutes. *See Seay v. Hall*, 677 S.W.2d 19, 25 (Tex. 1984) ("While this court may properly write in areas traditionally reserved to the judicial branch of government, it would be a usurpation of our powers to add language to a law where the legislature has refrained."); *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920) ("[Courts] are not the law-making body. They are not

responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law.").

Even though a hospital district assumes responsibility for providing medical and hospital care as a condition of collecting a tax, none of the statutes referenced by THA clearly waive a hospital district's governmental immunity so it can be sued over how and when the tax receipts are spent. And policy determinations involving who actually collects taxes, whether collecting entities are subject to suit if taxes are withheld by the collecting authority, whether laws will result in bankruptcy of municipal entities, and conforming statutory mandates for indigent care to constitutional mandates are the very type of policy decisions the Legislature is expected to make. The judiciary's task is not to refine legislative choices about how to most effectively provide for indigent care and collect and distribute taxes to pay for it. The judiciary's task is to interpret legislation as it is written. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 748 (Tex.2003) ("Our role ... is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent."). And as to THA's contention that municipal hospital districts' expenditures for certain indigent health care are a constitutional violation, no one has charged in this case that THA's expenditures are unconstitutional, and whether they are is not an issue properly presented.

THA also argues that in light of the constitutional provision, the Legislature must have intended to waive immunity to suit by so thoroughly addressing hospital districts' *liability* and procedures for determination of eligibility of indigents for care.[3] THA refers to two statutes that have been interpreted as waiving sovereign or governmental immunity by language that the governmental entity "is liable for" certain damages, similar to the statutes under consideration here. The first is the Tort Claims Act's provision that "[a] governmental unit in the state is liable for ... property damage, personal injury, and death" under certain circumstances. *See* Tex. Civ. Prac. & Rem.Code § 101.021. THA cites *University of Texas Medical Branch v. York,* 871 S.W.2d 175, 177–79 (Tex.1994), for support. THA's reliance on the language of the Tort Claims Act and *York* is misplaced. First, the Tort Claims Act specifically waives immunity in section 101.025:

101.025 Waiver of Governmental Immunity; Permission to Sue

(a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

(b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

Tex. Civ. Prac. & Rem.Code § 101.025. And in *York,* the question was not whether immunity to suit had been waived by the Tort Claims Act; the issue was whether the use, misuse, or non-use of information recorded in a patient's medical records constituted use of tangible personal property for which governmental immunity is waived. *York,* 871 S.W.2d at 175.

---

**3.** This argument is similar to an argument that the statutes at issue would have no purpose absent waiver of HCHD's immunity from suit. *See Tex. Dep't of Transp.,* 146 S.W.3d at 643. THA does not claim that the statutes have no purpose in the absence of waiver. To the contrary, at oral argument THA candidly professed that the statutory construct is well designed in regard to allocation of responsibility for indigent care.

THA also points to Code of Criminal Procedure article 104.002(a) which states "[e]xcept as otherwise provided by this article, a county is liable for all expenses incurred in the safekeeping of prisoners ... kept under guard by the county." THA refers us to *Harris County v. Hermann Hospital*, 943 S.W.2d 547 (Tex.App.-Eastland 1997, no writ), in which a suspect who was under guard by Harris County was taken by Life Flight to Hermann Hospital and treated. When the County refused to pay for the care rendered, Hermann Hospital sued. *Id.* at 548. The trial court denied Harris County's motion for summary judgment and granted that of Hermann Hospital. *Id.* The question of immunity to suit was not urged, but the court of appeals, in addressing Harris County's claim that article 104.002 did not authorize a third-party lawsuit against the County held that "[a]lthough the statute does not explicitly authorize a suit against a county for the payment of prisoners' medical expenses, it is clear that the statute imposes liability for these expenses on counties." *Id.* at 550. The court then stated that the hospital's only recourse after the County refused to pay was to bring suit. *Id.* The court relied on former Texas Local Government Code section 81.041 [4] (now section 89.004) which provided that "a person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim." The court also cited *Farmers State Bank of New Boston v. Bowie County*, 127 Tex. 641, 95 S.W.2d 1304, 1306 (1936), and *Jensen Construction Co. v. Dallas County*, 920 S.W.2d 761, 770 (Tex. App.-Dallas 1996, writ denied), which interpreted similar statutory language to de-termine whether suit against a county was authorized. We are not persuaded that the referenced authorities are a firm footing for THA. First, those cases did not rely only on a statute that provided a governmental entity was liable. Additionally, after those cases were decided, this Court rejected the argument that Texas Local Government Code Section 89.004 waived immunity from suit. *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 249 (Tex.2002).

▮ Furthermore, as we have noted, "[T]he 'heavy presumption in favor of immunity' derives not just from principles related to separation of powers but from practical concerns: 'In a world with increasingly complex webs of governmental units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require.'" *Nueces County v. San Patricio County*, 246 S.W.3d 651, 653 (Tex.2008) (*quoting City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex.2007)). Given the interaction between federal, state, and local entities to provide for indigent health care, it is the Legislature that is in the better position to weigh the competing interests, financial burdens, benefits, and allocation of costs and resources among the participants in the process of providing that care. If the Legislature intends to waive hospital districts' immunity from suit, we have confidence it will do so clearly and unambiguously, not by implication as THA in effect urges has been done. If we were to hold that waiver of governmental immunity to suit can occur in the manner contended for by THA—by repeatedly using language in statutes to the effect that the district "assumes liability" and "is liable" for expenses—our holding would be at odds with

4. *See* Act of May 15, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 793.

the Legislature's plainly expressed intent that statutes not be construed as waiving immunity unless there is clear and unambiguous waiver language in the statute. *See* TEX. GOV'T CODE § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *id.* § 311.016 (providing that use of the word "shall" in a statute imposes a duty absent another meaning from the context or specific statutory provision). The language THA references is not a clear and unambiguous waiver of hospital districts' immunity from suit for the type claim it makes. *Cf. Tex. Dep't of Transp.*, 146 S.W.3d at 643–44 (holding that a statute's requirement that compensation "shall be made" does not alone waive immunity). Nor does the whole of the referenced framework of constitutional and statutory law, when analyzed according to the factors we set out in *Taylor*, lead us to the interpretation THA urges.[5]

### IV. Response to the Dissent

■ The dissent argues that the case should be remanded based on *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995), and *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex.2007), which provide that suits for injunctive relief may be maintained against governmental entities. The dissent claims that by not doing so, we

preclude THA from seeking injunctive relief. But this has always been and remains a suit for money damages. In the trial court, THA sought judgment for "liquidated actual damages" for the itemized care it had already provided to specific patients as well as interest, costs, and attorney's fees. HCHD filed pleas to the jurisdiction asserting immunity, and although THA amended its petition twice, it never requested relief other than monetary damages. Nor did THA ask that we remand the case so that it may replead and request such relief. *See State v. Brown*, 262 S.W.3d 365, 370 (Tex.2008) (declining to remand a case when the petitioner did not seek such relief).[6]

### V. Conclusion

HCHD's immunity from suit for damages has not been waived and the trial court did not have jurisdiction over TRH's suit. The judgment of the court of appeals is reversed and the cause is dismissed.

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice O'NEILL, Justice BRISTER, and Justice WILLETT joined.

Chief Justice JEFFERSON, joined by Justice O'NEILL, Justice BRISTER, and Justice WILLETT, dissenting.

Despite a constitutional dictate requiring a legislatively authorized hospital district

---

5. THA also references several Attorney General opinions responding to questions about county hospital districts' liability for costs of indigent care. The opinions address *liability* of the districts, but not immunity from suit. The referenced Attorney General opinions do not persuade us that districts' immunity from suit has been waived for the reasons we have expressed as to statutory provisions addressing districts' liability for indigent health care costs.

6. In *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex.2009), also issued today, the Court holds that a claim for prospective declaratory and injunctive relief against government actors in their official capacities but acting *ultra vires* is not barred by immunity even if the requested relief compels the governmental entity to make monetary payments. However, the Court reaffirms the principle that immunity bars suits against governmental entities for retrospective monetary relief. *Id.* at 369.

to "assume full responsibility for providing medical and hospital care to needy inhabitants of the county," the Court leaves Tomball Hospital Authority ("THA") no means to obtain payment from Harris County Hospital District ("HCHD") for services provided to indigent patients. The Court holds that HCHD is immune from suit and dismisses the case, precluding THA from seeking even injunctive relief for HCHD's alleged constitutional violations. Because our constitution compels a different result, I respectfully dissent.

Article IX, section 4 of the Texas Constitution provides that if a hospital district is created by statute, it "shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, and thereafter such county and cities therein shall not levy any other tax for hospital purposes." TEX. CONST. art. IX, § 4. The Court holds that this constitutional language:

> bears on a hospital district's *liability* for providing care, but it does not address the method by which that liability may be enforced; that is, whether a hospital district is or is not immune from suit to establish and secure a judgment for the amount of whatever its liability may be. We need go no further than the plain language of the Constitution to conclude that it does not provide that suits for damages may be filed against a hospital district.

283 S.W.3d at 850. I am not persuaded by the Court's approach. There are many constitutional mandates that do not spell out precisely the means of implementation, but this silence does not render them advisory.

The Court cites *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995), to support its holding today. In *Bouillion*, however, we explained that while there was no implied private right of action for damages arising under the free speech and free assembly section of the Texas Constitution, suits for injunctive relief were permissible:

> The framers of the Texas Constitution articulated what they intended to be the means of remedying a constitutional violation. The framers intended that a law contrary to a constitutional provision is void. There is a difference between voiding a law and seeking damages as a remedy for an act. A law that is declared void has no legal effect. Such a declaration is different from seeking compensation for damages, or compensation in money for a loss or injury. Thus, suits for equitable remedies for violation of constitutional rights are not prohibited.

*Id.* at 149 (citation omitted). In so holding, we distinguished article I, section 17, the takings clause, which "provides that no person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation" and noted that this language created "a textual entitlement to compensation in its limited context" and was " 'a waiver of governmental immunity' " for a takings claim. *Id.* (quoting *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980)). We cautioned, however, that "th[e] language [of the takings clause] cannot be interpreted beyond its context. The text of section 17 waives immunity only when one seeks adequate compensation for property lost to the State." *Id.*

The constitutional provision at issue in this case, article IX, section 4, may not be as clear a "textual entitlement to compensation" as article I, section 17. But this

suit is also not a private action for damages like *Bouillion,* in which the plaintiffs sought money damages for violation of their constitutional rights. Here, Tomball seeks reimbursement for care that it provided to indigent patients within the hospital district under the assumption that it was constitutionally entitled to payment from HCHD. I would hold that the constitutional mandate that hospital districts "shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county" is "itself ... the authorization for compensation ... and is a waiver of governmental immunity" for a suit alleging a violation of this requirement. *Steele,* 603 S.W.2d at 791.

Even if this mandate were not clear, however, because THA alleges that HCHD violated the constitutional mandate to "assume full responsibility" for indigent care, governmental immunity does not bar THA from seeking injunctive relief against HCHD.[1] *Bouillion,* 896 S.W.2d at 149 (noting that "suits for equitable remedies for violation of constitutional rights are not prohibited"). We recently held that under *Bouillion,* " 'suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." *City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex.2007) (per curiam) (quoting *Bouillion,* 896 S.W.2d at 149). In *City of Elsa,* police officers sought equitable and injunctive relief for alleged consti-

tutional violations. *Id.* at 391. The court of appeals affirmed the trial court's denial of the City's plea to the jurisdiction and remanded the officers' claims for injunctive relief to the trial court. *Id.*

At this Court, the City asserted that the court of appeals should have dismissed the claims for injunctive relief rather than remanding because the officers sought relief against the City itself and not against the officials alleged to have committed the unauthorized acts. *Id.* We rejected this argument, finding it inconsistent with *Bouillion's* holding that "although there is no 'implied private right of action for damages against governmental entities for violations of the Texas Constitution,' suits for 'equitable remedies for violation of constitutional rights are not prohibited.' " *Id.* at 392 (quoting *Bouillion,* 896 S.W.2d at 144, 149). We concluded that the court of appeals did not err by refusing to dismiss the officers' claims for injunctive relief because " 'suits for injunctive relief' may be obtained against governmental entities to remedy violations of the Texas Constitution." *Id.* (quoting *Bouillion,* 896 S.W.2d at 149). Thus, immunity would not bar THA's claims for such relief here.

While THA's live pleading does not seek equitable relief, we have held that in considering a plea to the jurisdiction, "[i]f the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff

1. This is consistent with federal cases addressing alleged violations of the United States Constitution; the United States Supreme Court has repeatedly held that federal courts may grant equitable relief for constitutional violations. *See, e.g., Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *Johnson v. Wells Fargo & Co.,* 239 U.S. 234, 244, 36 S.Ct. 62, 60 L.Ed. 243 (1915) ("Such continuing violation of constitutional rights might afford a ground for equitable relief."); *see also Carlson v. Green,* 446 U.S. 14, 42, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Rehnquist, J., dissenting) ("The broad power of federal courts to grant equitable relief for constitutional violations has long been established.").

should be afforded the opportunity to re-plead." *Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex.2007); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex.2004). I would affirm the court of appeals' judgment remanding this case to the trial court. Because the Court instead dismisses the case, I respectfully dissent.