*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-10-00199-CV

**SYLVIA S. ROMO, BEXAR COUNTY TAX ASSESSOR - COLLECTOR**,
Appellant

v.

**CAVENDER TOYOTA, INC.**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-10774
Honorable Larry Noll, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice
Concurring Opinion by:  Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  October 20, 2010

REVERSED AND REMANDED

Appellant Sylvia S. Romo, Bexar County Tax Assessor-Collector ("Romo") appeals the trial court's order denying her plea to the jurisdiction. On appeal, Romo alleges the trial court erred in denying her plea to the jurisdiction because governmental immunity protects her from suit. We reverse the trial court's order denying Romo's plea to the jurisdiction and remand the cause to the trial court with instructions to dismiss Cavender Toyota's ("Cavender") lawsuit.

**BACKGROUND**

Rogelio Sanchez purchased a 2008 Mazda from World Car Mazda of San Antonio in April 2008. National Auto Finance Company ("NAFC") financed the transaction between World Car Mazda and Sanchez, and the application for certificate of title submitted to Romo identified NAFC as a first lienholder on the vehicle. A certificate of title thereafter issued, but the certificate of title issued by Romo failed to reference the existence of NAFC's lien.

After his transaction with World Car Mazda, Sanchez decided to purchase a 2008 Toyota Tundra from Cavender in June 2008. Cavender accepted Sanchez's Mazda as a trade-in and credited Sanchez $12,350 towards the purchase price of his new vehicle. Sanchez presented Cavender with the certificate of title issued by Romo reflecting no liens on the Mazda and made no attempt to notify Cavender about NAFC's lien. Cavender then sold Sanchez's Mazda to Cynthia Steubs for $18,738.74 in August 2008. Steubs financed the purchase of the vehicle through Security Service Federal Credit Union ("SSFCU"). After Steubs purchased the Mazda from Cavender, the Texas Department of Transportation notified SSFCU about NAFC's lien on the vehicle. Steubs returned the vehicle to Cavender, which refunded Steubs $18,738.74. To obtain clear title to the Mazda, Cavender also paid NAFC $17,000.

Cavender filed a suit against Romo for breaching the Texas Certificate of Title Act (the "Act"). *See* TEX. TRANSP. CODE. ANN. §§ 501.001 *et. seq.* (West 2007 & Supp. 2010). According to Cavender's petition, "Romo breached the duties set forth in the Certificate of Title Act by failing to note NAFC's lien on the title receipt and on the certificate of title for the Mazda." It further claimed Romo breached her duties under the Act "by failing to deliver the certificate of title to NAFC, the first lienholder." Cavender's petition alleges it suffered

$23,388.74 in damages as a result of Romo's failure to comply with her responsibilities under the Act and asserts Romo is liable on her official bond for its damages.

Romo responded to Cavender's suit by filing a plea to the jurisdiction on the ground of governmental immunity. Romo's plea claimed Cavender failed to "plead how the Tax-Assessor's immunity from suit is waived" and requested the court to dismiss the action. Cavender filed a response to Romo's jurisdictional plea and an amended petition. Cavender claimed the Legislature waived Romo's governmental immunity by enacting section 501.137 of the Texas Transportation Code, which provides: "Each county assessor–collector shall comply with this chapter . . . An assessor-collector who fails or refuses to comply with this chapter is liable on the assessor-collector's official bond for resulting damages suffered by any person." Following a hearing on Romo's plea to the jurisdiction, the trial court denied Romo's plea. Romo now brings this interlocutory appeal, claiming the trial court erroneously denied her plea to the jurisdiction.

### IMMUNITY

Governmental immunity protects political subdivisions of the State, including counties, cities, and school districts, from lawsuits for damages. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). It encompasses two distinct concepts: (1) immunity from suit (barring a lawsuit unless the Legislature expressly gives consent to suit); and (2) immunity from liability (even if the Legislature has expressly given its consent to suit). *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006); *City of Carrollton v. Singer*, 232 S.W.3d 790, 795 (Tex. App.—Fort Worth 2007, pet. denied). Immunity from liability is an affirmative defense; immunity from suit deprives a court of subject matter jurisdiction. *Singer*, 232 S.W.3d at 795; *see Harris*

*County*, 283 S.W.3d at 842 (stating immunity from suit is jurisdictional and bars suit; immunity from liability is not jurisdictional and protects from judgments).

### STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The party suing a governmental entity bears the burden of affirmatively showing the trial court has jurisdiction to hear the cause. *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Harris County*, 283 S.W.3d at 842; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). We consider the pleadings and the evidence pertinent to the jurisdictional inquiry; we do not consider the merits of the case. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). "We review the trial court's interpretation of applicable statutes *de novo*." *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 256 S.W.3d 735, 741 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd).

### DISCUSSION

To resolve this appeal, we must determine whether the Legislature waived Romo's immunity from suit through its enactment of section 501.137 of the Transportation Code. The Legislature has mandated that a statute shall not be construed as a waiver of immunity unless the waiver is effected by clear and unambiguous language. TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2010) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). Courts have little

difficulty in ascertaining the Legislature's intent to waive immunity from suit when a statute contains language expressly waiving such immunity. *See Taylor*, 106 S.W.3d at 697. The Texas Supreme Court has recognized "that it is more difficult to determine legislative consent to suit against an entity when language specifying that 'immunity is waived' is absent from the provisions in question." *Harris County*, 283 S.W.3d at 844; *see Taylor*, 106 S.W.3d at 697. In the absence of express waiver language, the Supreme Court has utilized aids to help analyze statutes for legislative consent to suit: "(1) whether the statutory provisions, even if not a model of clarity, waive immunity without doubt; (2) ambiguity as to waiver is resolved in favor of retaining immunity; (3) immunity is waived if the Legislature requires that the entity be joined in a lawsuit even though the entity would otherwise be immune from suit; and (4) whether the Legislature provided an objective limitation on the governmental entity's potential liability." *Harris County*, 283 S.W.3d at 844. The court has also considered whether the statutory provisions would serve any purpose absent a waiver of immunity.[1]

It is undisputed by the parties that the statute at issue does not contain the type of language generally used by the Legislature to confirm its intent to waive immunity from suit. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (West 2005) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."), *id*. § 63.007(b) (West Supp. 2010) ("The state's sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section."), *id*. § 81.010(d) (West 2005) ("Governmental immunity to suit is waived and abolished only to the extent of the liability created by Subsection (b)."), TEX. GOV'T CODE ANN. § 2007.004 (West 2000) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability.

---

[1] *Id.* "It appears that courts may use [the aforementioned aids,] but are not required to do so." *Clear Lake*, 256 S.W.3d at 741.

created by this chapter."), and TEX. PROP. CODE ANN. § 74.506(c) (West Supp. 2010) ("The state's immunity from suit without consent is abolished with respect to suits brought under this section."), *with* TEX. TRANSP. CODE. ANN. § 501.137 ("Each county assessor–collector shall comply with this chapter . . . An assessor-collector who fails or refuses to comply with this chapter is liable on the assessor-collector's official bond for resulting damages suffered by any person."). We therefore turn to the aids established by the Supreme Court to analyze section 501.137 for legislative consent to suit. *See Harris County*, 283 S.W.3d at 844. Considering these aids, we conclude that section 501.137 does not waive Romo's immunity from suit.

Reviewing the terms used by the Legislature in section 501.137, the plain language of the statute does not waive immunity without doubt. As noted above, section 501.137 provides: "Each county assessor–collector shall comply with this chapter . . . An assessor-collector who fails or refuses to comply with this chapter is liable on the assessor-collector's official bond for resulting damages suffered by any person." TEX. TRANSP. CODE. ANN. § 501.137. Although the statute explicitly states that an assessor-collector "is liable" for failing to comply with his or her obligations under the Act, such language does not necessarily mean that immunity from suit is waived. *See Harris County*, 283 S.W.3d at 849-50 ("If we were to hold that waiver of governmental immunity to suit can occur in the manner contended for by THA—by repeatedly using language in statutes to the effect that the district 'assumes liability' and 'is liable' for expenses—our holding would be at odds with the Legislature's plainly expressed intent that statutes not be construed as waiving immunity unless there is clear and unambiguous waiver language in the statute."). This language appears to address Romo's liability rather than her immunity from suit.

Cavender argues the statute's inclusion of the term "damages" confirms that the Legislature contemplated the pursuit of lawsuits against Romo because "[t]here is no way to recover *damages* without . . . bringing *suit*." However, a statute's reference to "damages" in and of itself does not mean that immunity from suit is waived. *See, e.g.*, *City of Midlothian v. Black*, 271 S.W.3d 791, 795-98 (Tex. App.—Waco 2008, no pet.) (analyzing the following statutory language from section 11.086 of the Texas Water Code and concluding it does not demonstrate a clear and unambiguous waiver of immunity: "No person may divert or impound the natural flow of surface waters in this state . . . in a manner that damages the property of another by the overflow of the water diverted or impounded . . . A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow."). If we were to hold that a waiver of governmental immunity from suit can occur by a mere reference to "damages," we believe our holding would be at odds with the Legislature's plainly expressed intent that statutes not be construed as waiving immunity unless there is clear and unambiguous waiver language in the statute. Indeed, it is difficult to conclude such language is a clear and unambiguous waiver of immunity when far more overt declarations in statutes enacted by the Legislature fall short. *See, e.g., Tooke*, 197 S.W.3d at 342 (holding statutory phrases stating a governmental entity may "sue and be sued" or "plead and be impleaded" are not clear and unambiguous waivers of sovereign immunity). When, as here, the text of the statute leaves room to doubt whether the Legislature intended to waive immunity from suit, we resolve any ambiguities by retaining immunity. *See Taylor*, 106 S.W.3d at 697; *see also Magnolia Petro. Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935) ("Any ambiguity or obscurity in the terms of the statute must operate in favor of the state.").

The next aid we consider is whether the statute requires the governmental entity be joined in the lawsuit even though the entity would otherwise be immune from suit. *Taylor*, 106 S.W.3d at 697-98. Nothing in section 501.137 requires the government to be joined in a lawsuit for a violation of the Act. *Compare* TEX. TRANSP. CODE. ANN. § 501.137 ("Each county assessor–collector shall comply with this chapter . . . An assessor-collector who fails or refuses to comply with this chapter is liable on the assessor-collector's official bond for resulting damages suffered by any person."), *with* TEX. CIV. PRAC. & REM. CODE § 37.006 (West 2008) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding . . . In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."). The lack of such a requirement is yet another indication that the Legislature did not intend to waive immunity under section 501.137. *See Harris County*, 283 S.W.3d at 844; *Taylor*, 106 S.W.3d at 697-98, 701.

Another aid we consider is whether the statute provides an objective limitation on the government's potential liability. *See Harris County*, 283 S.W.3d at 844. Cavender argues section 501.137 imposes such a limitation, asserting the statute limits the assessor-collector's liability to the amount of his or her bond.[2] However, there is no language within the statute that expressly limits the government's liability to the amount of the tax assessor-collector's bond.

---

[2] Prior to an assessor-collector beginning performance of his or her duties of office, the "person elected or appointed as county assessor-collector must give bonds to the state and to the county, conditioned on the faithful performance of the person's duties as assessor-collector." TEX. TAX CODE ANN. § 6.28 (West 2008). The bond the assessor-collector gives to the county, which is at issue here, is for "an amount equal to 10 percent of the total amount of county taxes imposed in the preceding tax year, except that the amount of the bond may not be more than $100,000." *Id.* § 6.28(c).

*Compare* TEX. LOC. GOV'T CODE ANN. § 85.001(e) (West 2008) ("The bond is not void on the first recovery, but may be sued on from time to time in the name of any injured person until the entire amount of the bond is recovered"); *id.* § 86.002(c) ("The bond is not void on the first recovery but may be sued on from time to time in the name of an injured party until the whole amount of the bond is recovered"); TEX. EDUC. CODE ANN. § 51.212(c) (West Supp. 2010) ("The bond may be sued on from time to time in the name of the person injured until the whole amount is recovered"); *id.* § 51.214(b) ("The bond may be sued on from time to time in the name of the person injured until the whole amount is recovered"), *with* TEX. TRANSP. CODE. ANN. § 501.137 ("An assessor-collector who fails or refuses to comply with this chapter is liable on the assessor-collector's official bond for resulting damages suffered by any person.").

Cavender cites *Keller v. Judd*, 671 S.W.2d 604, 607 (Tex. App.—San Antonio 1984, no writ) and *Doyle v. Harben*, 660 S.W.2d 586, 589 (Tex. App.—San Antonio 1983, no writ) as support for its contention, but Cavender's reliance on these cases is misplaced. In *Keller* and *Doyle*, both of which involve the sale of stolen automobiles, the sellers of the vehicles argued that subjecting them to liability for automobiles that turned out to be stolen was unconstitutional because they had relied on the Act in purchasing the automobiles. *Keller*, 671 S.W.2d at 607; *Doyle*, 660 S.W.2d at 589. The sellers contended the State was culpable —as opposed to the sellers— because of state agent error in issuing title certificates for the stolen vehicles. *Keller*, 671 S.W.2d at 606-07; *Doyle*, 660 S.W.2d at 588-89. The courts in both cases rejected the constitutional claims, noting that any negligent or improper action by an agent of the state would be a proper basis for a claim against the agents' bonds under the Act. *Keller*, 671 S.W.2d at 607 (citing Article 6687-1, § 56 of the Revised Civil Statues of Texas, which is the predecessor statute to section 501.137, and stating "[o]n the one hand, appellant could have sued his seller,

Crayton. Or, if his allegations of error fit the requirements of art. 6687-1, § 56 (Vernon 1977), he could sue designated agents on their bonds . . . To the extent appellant seeks to sue government agents except as provided for under § 56, appellant would have us abolish sovereign immunity. We decline to do so."); *Doyle*, 660 S.W.2d at 589 (stating "[i]f, as appellant claims, the authorized [State] agent negligently issued 'quick titles' to the automobiles, then appellant could have attempted to hold the agent liable on his bond under section 56 of the Act."). Absent from *Keller* and *Doyle*, however, is any discussion of whether the Legislature actually intended to waive the government's immunity from suit through its enactment of the statutory language at issue. *Keller* and *Doyle* are thus not instructive.

Romo asserts section 501.137, if applied as Cavender suggests, subjects her to possible indeterminate damage awards. If a damage award were to deplete her official bond, Romo notes she would be required under the Tax Code to furnish another bond to the county. She points out that if the damage award in question exceeded the amount of her original bond, there is no language within section 501.137 preventing a person from satisfying the remainder of his or her damage award against the successive bond. We agree with Romo's rationale. Thus, we conclude the absence of a limitation on the government's potential liability indicates that the Legislature did not intend to waive immunity under section 501.137. *See Harris County*, 283 S.W.3d at 844.

Lastly, we may look to whether the statutory provision would serve any purpose absent a waiver of immunity. *Id.* Cavender urges that failing to interpret section 501.137 as a waiver of immunity would render several provisions of the Act meaningless. Specifically, Cavender claims both sections 501.030(f), which relates to motor vehicles brought into this State from another jurisdiction, and 501.106, which concerns enforcement of the subchapter concerning

nonrepairable and salvage motor vehicles, make no sense if immunity from suit is not waived through section 501.137.  Section 501.030(f) provides as follows:

> A county assessor-collector may not be held liable for civil damages arising out of the assessor-collector's failure to reflect on the title receipt a lien or encumbrance on a motor vehicle to which Subsection (e)[3] applies unless the assessor-collector's failure constitutes willful or wanton negligence.

TEX. TRANSP. CODE. ANN. § 501.030(f) (West 2007).  Section 501.106 provides:

> This subchapter shall be enforced by the department and any other governmental or law enforcement entity, including the Department of Public Safety, and the personnel of the entity as provided by this subchapter . . . The department, an agent, officer, or employee of the department, or another person enforcing this subchapter is not liable to a person damaged or injured by an act or omission relating to the issuance of a regular certificate of title, nonrepairable vehicle title, or salvage vehicle title under this subchapter.

*Id.* § 501.106 (West 2007).  We do not believe the provisions identified by Cavender are rendered meaningless if immunity is not waived under section 501.137.  As Romo argues in her briefing, Chapter 501 of the Certificate of Title Act establishes a framework designed to protect the interests of governmental bodies that are entitled to tax revenues and fees collected by an assessor-collector.  The official bond referenced in section 501.137 can be either a state bond or a county bond, *see* TEX. TAX CODE ANN. § 6.28, and is available to an aggrieved governmental entity that is not paid its share of taxes collected by an assessor-collector.  Under this view of the statute, the statute serves a purpose even absent a waiver of immunity because the statute

---

[3] Subsection (e) states:

> Before a motor vehicle that is required to be registered in this state and that is brought into this state by a person other than a manufacturer or importer may be bargained, sold, transferred, or delivered with an intent to pass an interest in the vehicle or encumbered by a lien, the owner must apply for a certificate of title on a form prescribed by the department to the county assessor-collector for the county in which the transaction is to take place. The assessor-collector may not issue a title receipt unless the applicant delivers to the assessor-collector satisfactory evidence of title showing that the applicant is the owner of the vehicle and that the vehicle is free of any undisclosed liens.

TEX. TRANSP. CODE. ANN. § 501.030(e) (West 2007).

provides circumstances under which an entity may be deemed liable under the Act. In light of our analysis of the aids established by the Supreme Court, we hold that section 501.137 does not waive Romo's immunity from suit.

## ULTRA VIRES CLAIM

Cavender nonetheless argues governmental immunity does not apply to this case because "it represents a suit against a governmental official who has failed to perform a ministerial act. As such, the case falls within the *ultra vires* exception to sovereign immunity." It appears Cavender is attempting to circumvent Romo's immunity from suit by recharacterizing its suit as a quasi-declaratory judgment action. Cavender's action is plainly a suit for money damages; therefore, it is barred by immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009) ("It is well settled that 'private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim.'").

## CONCLUSION

"The Certificate of Title Act . . . was enacted for the protection of the public." *Doyle*, 660 S.W.2d at 588. Its spirit and purpose "is to prevent fraud; not to encourage it." *Bank of Atlanta v. Fretz*, 148 Tex. 551, 560, 226 S.W.2d 843, 849 (1950). Sanchez committed a fraud against Cavender, yet Cavender seeks to pursue its damages solely against Romo. We do not believe that allowing Cavender to sue Romo on her official bond in this instance furthers the spirit of the Act. Because we cannot interpret the statute in the manner urged by Cavender, we must conclude the trial court erred in denying Romo's plea to the jurisdiction. Accordingly, we reverse the trial court's order denying Romo's plea to the jurisdiction and remand the cause to the trial court with instructions to dismiss Cavender's suit.

Catherine Stone, Chief Justice