Cathy L. SCARVER, as Trustee of the Bankruptcy Estate of Mortgage Funding Network, Inc., A Debtor in Bankruptcy, Appellant,

v.

WALLER COUNTY & Waller County District Clerk, Patricia SPA-DACHENE, Appellees.

No. 14–10–00898–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 2011.

Richard A. Behlmann, Katy, for appellant.

Jennifer A. Powell, Austin, for appellees.

Panel consists of Chief Justice HEDGES, and Justices SEYMORE and BOYCE.

## OPINION

ADELE HEDGES, Chief Justice.

This case involves the alleged negligent loss of registry funds under Chapter 117 of the Texas Local Government Code. Appellant, Cathy Scarver, trustee of the bankruptcy estate of Mortgage Funding Network, Inc., sued appellees, Waller County and Waller County District Clerk, Patricia Spadachene, to recover the funds. In her sole issue, Scarver appeals the order of the trial court granting appellees' plea to the jurisdiction. We affirm.

### I. Factual and Procedural Background

On April 20, 2001, Royal Independent School District ("Royal ISD") filed a delinquent tax suit against Janice Phillips, the landowner of real property located in Waller County. On October 11, 2001, the trial court rendered judgment in favor of Royal ISD. On June 3, 2003, the property at issue was sold in a tax sale, resulting in excess proceeds in the amount of $23,474.24. The excess proceeds were deposited with the Waller County District Clerk's office.

On August 20, 2003, the district clerk's office sent a notice of excess funds to Mortgage Funding Network, Inc. ("MFNI"),[1] the lienholder on the property, and Phillips. On June 2, 2005, John W. Ragsdale, the then-trustee of MFNI's bankruptcy estate, filed a motion to withdraw the excess proceeds.[2] Although the district clerk's office had advised Ragsdale that he needed to set the motion for hearing, Ragsdale did not obtain a hearing or a ruling on his motion. On October 13, 2005, the district clerk disbursed the excess funds from the tax foreclosure sale to Royal ISD and Brookshire Katy Drainage District.[3]

On February 1, 2006, Ragsdale filed another motion to withdraw excess funds. The trial court granted Ragsdale's second motion to withdraw the funds and, on February 17, 2006, signed a consent order authorizing the district clerk to release the excess funds to Ragsdale.

Further litigation ensued, and Royal ISD appealed. On November 25, 2008, in a case styled *Royal Independent School District v. Ragsdale*, 273 S.W.3d 759 (Tex. App.-Houston [14th Dist.] 2008, no pet.), a panel of this Court dismissed the appeal for want of jurisdiction.[4] However, because the district clerk had previously released the funds to Royal ISD and the drainage district, Ragsdale was unable to recover the excess proceeds from the district clerk.

On November 16, 2009, Scarver, as the current trustee of MFNI's bankruptcy es-

---

1. At the time, MFNI was a debtor in an open Chapter 7 bankruptcy proceeding.

2. Although the Chapter 7 bankruptcy case was closed on September 12, 2003, Ragsdale filed a motion to re-open the case to collect the excess funds at issue.

3. Royal ISD received $21,831.04 and Brookshire Katy Drainage District, an intervenor in the underlying tax suit, received $1,643.20.

4. In that case, we determined that the orders challenged by Royal ISD could not form the basis of an interlocutory or direct appeal to this Court and dismissed the appeal for lack of jurisdiction. *See id.* at 766.

tate, filed an amended petition against appellees alleging negligent disbursement of registry funds under Chapter 117 of the Texas Local Government Code and seeking to recover the amount of the excess funds plus an additional $7,500 in compensatory damages. Appellees filed their plea to the jurisdiction asserting that Scarver had failed to affirmatively demonstrate a waiver of governmental immunity from suit for the claims asserted and that, absent such a waiver, the trial court lacked jurisdiction over her claims. On August 12, 2010, the trial court granted appellees' plea. This appeal followed.

## II. Standard of Review

■■■ A plea to the court's jurisdiction challenges a trial court's authority to determine the subject matter of a controversy. *See State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007). Subject matter jurisdiction is essential to a court's authority to act and, as such, cannot be waived. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 448 n. 2 (Tex.1996). The plaintiff bears the burden to plead facts affirmatively demonstrating subject matter jurisdiction. *See Holland,* 221 S.W.3d at 642; *Jansen v. Fitzpatrick,* 14 S.W.3d 426, 431 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Whether a court has subject matter jurisdiction over a case is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Id.*

■■■ A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *Id.* If the plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* If a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading, and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without permitting the plaintiff an opportunity to amend. *Id.* at 227.

## III. Analysis

Scarver sued appellees for the district clerk's alleged negligent loss of court registry funds under Chapter 117 of the Texas Local Government Code. Specifically, Scarver alleged that the district clerk negligently lost the funds by releasing them without a court order in violation of section 117.053.[5] On appeal, Scarver contends that the trial court erred in granting appellees' plea to the jurisdiction because she affirmatively demonstrated a waiver of governmental immunity to both suit and liability for her claims. Appellees argue that the pleadings in this case affirmatively negate the existence of jurisdiction be-

5. Section 117.053(b) provides as follows:

Except as provided by Subsection (a), a clerk may not draw a check on special account funds held by a depository except to pay a person entitled to the funds. The payment must be made under an order of the court of proper jurisdiction in which the funds were deposited except that an appeal bond shall be paid without a written order of the court on receipt of mandate ˙or dismissal and funds deposited under Section 887, Texas Probate Code, may be paid without a written order of the court. The clerk shall place on the check the style and number of the proceeding in which the money was deposited with the clerk.

Tex. Loc. Gov't Code Ann. § 117.053(b) (West 2008).

cause they demonstrate that appellees are immune from suit for Scarver's claims.

### A. Principles of Immunity

■■■■ "Sovereign immunity protects the State from lawsuits for money damages." *Reata Const. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006) (quoting *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002)). In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts, from lawsuits for damages. *Id.*[6]

■■■■ Sovereign immunity has two components: immunity from suit and immunity from liability. *See Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997), *superceded by statute on other grounds,* Tex. Gov't Code Ann. § 2260.001 (West 2008), *as recognized in Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591 (Tex.2001). Immunity from suit prohibits suits against the State unless the State expressly consents to suit. *Taylor,* 106 S.W.3d at 696. Thus, although the claim asserted may be one on which the State acknowledges liability, immunity from suit bars a remedy

---

**6.** Although the concepts of sovereign and governmental immunity are distinct, the Texas Supreme Court has recognized that courts often use these terms interchangeably. *Id.* For ease of reference, we will refer to both as sovereign immunity.

**7.** Section 117.124, entitled "Liability of Clerk," appears in Subchapter E of Chapter 117 which applies only to counties with a population of more than 1.3 million. *See* Tex.

---

until the Legislature consents to suit. *See id.; Fed. Sign,* 951 S.W.2d at 405. Immunity from suit defeats a trial court's subject matter jurisdiction and, therefore, is properly asserted in a plea to the jurisdiction. *Miranda,* 133 S.W.3d at 225–26. By contrast, immunity from liability protects the State from judgments even after the Legislature has consented to suit. *Taylor,* 106 S.W.3d at 696; *Fed. Sign,* 951 S.W.2d at 405. Therefore, even if the Legislature has authorized a claimant to sue, the State's immunity is retained until it acknowledges liability. *Taylor,* 106 S.W.3d at 696. Unlike immunity from suit, the affirmative defense of immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999) (per curiam).

### B. Statutory Provisions

In support of her argument that immunity is waived for her claims, Scarver relies on sections 117.124,[7] 117.081, and 117.083 of the Texas Local Government Code. Section 117.081 provides as follows:

(a) A county clerk or a district clerk is not responsible for a loss of registry funds resulting from the failure or negligence of a depository.

(b) This section does not release a county clerk or a district clerk from:

(1) liability for a loss of registry funds resulting from the clerk's official mis-

---

Loc. Gov't Code Ann. § 117.111 (West Supp. 2009), § 117.124 (West 2008). According to the most recent data available from the United States Census Bureau, Waller County has a population of 43,205; thus, section 117.124 is inapplicable here. *See* United States Census Bureau, *State and County QuickFacts,* at http://quickfacts.census.gov/qfd/states/48/48473.html.

conduct, negligence, or misappropriation of the funds; or

(2) responsibility for keeping the registry funds safe until the clerk deposits them in a depository selected under Subchapter B.

(c) After a county clerk or a district clerk deposits in a depository selected under Subchapter B the registry funds held by the clerk, the clerk is relieved of the responsibility for keeping the funds secure.

Tex. Loc. Gov't Code Ann. § 117.081 (West 2008) (footnote omitted).

Section 117.083 states as follows:

If registry funds held by a county clerk or a district clerk and deposited by the county with a depository selected under Subchapter B are lost for any reason, including a loss due to the insolvency of the depository, the county is liable to the rightful owner of the funds for the full amount of the funds due the owner.

*Id.* § 117.083 (footnote omitted).

Scarver's argument that immunity is waived for her claims is two-fold. First, she contends that sections 117.081 and 117.083 of the Texas Local Government Code contain clear and unambiguous language that waives governmental immunity to suit and liability when court registry funds are lost. Alternatively, Scarver argues that governmental immunity has been waived because, absent an interpretation of waiver, these sections would be rendered meaningless.

### C. Waiver of Immunity

■■■ "It is well settled in Texas that for the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Taylor,* 106 S.W.3d at 696; *see also Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.,* 283 S.W.3d 838, 842 (Tex.

2009) ("Immunity is waived only by clear and unambiguous language."). In 2001, the Legislature codified this standard by adding section 311.034 to the Code Construction Act, which provides, in part, as follows:

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.

Act of May 23, 2001, 77th Leg., R.S., ch. 1158, § 8, 2001 Tex. Gen. Laws 2570, 2572 (current version at Tex. Gov't Code Ann. § 11.034 (West Supp. 2009)).

■■■ Scarver argues that sections 117.081 and 117.083 contain clear and unambiguous language that waives appellees' governmental immunity to suit and liability. Initially, we note that because the State cannot assert immunity from liability in a plea to the jurisdiction—which appellees did not attempt to do here—the question of the extent to which immunity from liability is implicated in this case is not before us. *See Taylor,* 106 S.W.3d at 696 (concluding that because State could not properly assert immunity from liability in plea to jurisdiction, court had no occasion to decide extent to which immunity from liability was implicated). Consequently, we must determine whether sections 117.081 and 117.083 clearly and unambiguously waive immunity from suit for Scarver's claims.

The Texas Supreme Court has noted that some statutes leave no doubt about the Legislature's intent to waive immunity. *Id.* "[W]e have little difficulty recognizing the Legislature's intent to waive immunity from suit when a statute provides that … 'sovereign immunity to suit is waived.'"

*Id.* at 696–97 (citations omitted).[8] This case, however, presents no such explicit language waiving immunity from suit. Although the language in sections 117.081 and 117.083 addresses liability, it is silent as to waiver of immunity from suit.[9]

Nonetheless, the Texas Supreme Court "ha[s] on rare occasions found waiver of sovereign immunity absent 'magic words,' such as the State's 'sovereign immunity to suit and liability is waived.'" *Taylor,* 106 S.W.3d at 697. "Although it is more difficult to discern legislative consent under those circumstances," the court has developed the following aids to help guide the analysis in determining whether the Legislature has clearly and unambiguously waived sovereign immunity:

> First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." For example, we have found waiver when the provision in question would be meaningless unless immunity were waived. Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity.... Third, if the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity. Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability.

*Id.* at 697–98 (citations omitted).

The second, third, and fourth factors to analyze statutes for legislative consent to

---

8. The *Taylor* court also stated that it had little difficulty recognizing a waiver of immunity from liability when the statute in question provides that a state entity may be sued. *See id.* However, since *Taylor,* the Court has held that the language "sue and be sued" does not, by itself, clearly and unambiguously waive immunity. *See Tooke,* 197 S.W.3d at 337–42.

9. In support of her argument that sections 117.081 and 117.083 waive immunity from both liability and suit, Scarver relies on *Osburn v. Denton County,* 124 S.W.3d 289 (Tex. App.-Fort Worth 2003, pet. denied). In *Osburn,* the plaintiffs alleged that the district clerk's wrongful payment of funds deposited into the registry of the court amounted to a taking of the plaintiffs' property in violation of section 17, article I of the Texas Constitution. *See id.* at 292. The trial court granted the defendants' plea to the jurisdiction. *See id.* On appeal, the court found that because the plaintiffs had alleged a taking of property for private use, not public use, governmental immunity under the Constitution was not waived. *See id.* at 293. However, the appeals court also held that the court below had erred by dismissing the case without giving the plaintiffs an opportunity to amend their pleadings. *Id.* Because the court noted that sections 117.052, 117.081, and 117.083 of the Texas Local Government Code provide for liability for lost funds, and remanded the case to allow the plaintiffs an opportunity to assert "other cognizable causes of action," the opinion could conceivably be read to suggest that these statutes waive immunity from suit as well. *See id.* at 293–94. However, the *Osburn* court does not expressly state this proposition or provide any analysis to support such an interpretation. *See id.* Moreover, because these statutes were not pled in the trial court, the *Osburn* references to these statutes are dicta and not binding. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 400 n. 6 (Tex.2000) (finding court's statement in prior decision regarding whether medical benefits disputes are reviewable under section 410.255 of the Texas Labor Code was not at issue in prior case and, thus, statement was dicta and not binding).

suit do not support Scarver's contention that sections 117.081 and 117.083 waive immunity. Specifically, sections 117.081 and 117.083 are not ambiguous regarding immunity from suit but rather are silent. Further, if there were an ambiguity, it would be resolved in favor of retaining immunity. *See id.* at 697. There is also nothing in the statutory provisions at issue reflecting a legislative requirement that a governmental entity be joined in such a lawsuit. Moreover, sections 117.081 and 117.083 do not contain any objective limitation on potential liability. Thus, we must consider the first factor, that is, whether these sections waive the State's immunity beyond doubt.

Scarver argues that the Legislature must have intended to waive immunity because, absent such an interpretation, sections 117.081 and 117.083 are rendered meaningless and ineffective. We disagree. Chapter 117, entitled "Depositories for Certain Trust Funds and Court Registry Funds," contains various provisions addressing the selection, qualification, and designation of depositories as well as the accounts held there. *See* Tex. Loc. Gov't Code Ann., Ch. 117 (West 2008 & Supp. 2009). Subchapter D, entitled "Liabilities and Penalties," and in which sections 117.081 and 117.083 appear, allocates the responsibility for ensuring the safety of the funds to different entities at various stages. *See id.* §§ 117.081(a) ("A county clerk or a district clerk is not responsible

for a loss of registry funds resulting from the failure or negligence of a depository."); 117.081(b)(2) ("This section does not release a county clerk or a district clerk from: ... responsibility for keeping the registry funds safe until the clerk deposits them in a depository ...."); 117.081(c) ("After a county clerk or a district clerk deposits into a depository ... the registry funds held by the clerk, the clerk is relieved of the responsibility for keeping the funds secure."). In addition, if the district clerk sought to recover lost funds from a depository by filing suit, the clerk would waive immunity from suit for certain claims and could presumably be sued and held liable. *See Reata Const. Corp.*, 197 S.W.3d at 376–77 (holding that governmental entity that brings action waives immunity from suit for claims that are germane to, connected with, and properly defensive to its action, to the extent of an offset); *see also Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13–07–545–CV, 2008 WL 384320, at *2–4 (Tex.App.-Corpus Christi Feb. 14, 2008, no pet.) (mem. op.).[10] Thus, these sections have a purpose independent of waiver of immunity. Moreover, we recognize that although sections 117.081 and 117.083 address the liability of the county and district clerk for a loss of registry funds, such language does not mean that immunity from suit is waived. *See Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 848–49 ("If we were to hold that waiver of governmental immunity to suit can oc-

10. In *Rancho Viejo*, the court considered whether section 49.066(a) of the Texas Water Code waived the appellant's governmental immunity. *See* 2008 WL 384320, at *2. That section provides, in relevant part, as follows: "A district may sue and be sued in the courts of this state in the name of the district by and through its board. A suit for contract damages may be brought against a district only on a written contract of the district approved by the district's board." Tex. Water Code Ann. § 49.066(a) (West 2008). In its analysis, the court found that the statute would still retain meaning even if it were not construed as a waiver of immunity because, if a water district were a plaintiff in a suit concerning a contract—thereby waiving immunity regardless of whether the statute is construed as a waiver in and of itself—under section 49.066(a) the defendant in such a case would be able to assert a counterclaim only if the contract at issue was written and approved by the district's board. *See Rancho Viejo*, 2008 WL 384320, at *3 & n. 6.

cur in the manner contended for by THA—by repeatedly using language in statutes to the effect that the district 'assumes liability' and 'is liable' for expenses—our holding would be at odds with the Legislature's plainly expressed intent that statutes not be construed as waiving immunity unless there is clear and unambiguous waiver language in the statute."); *Romo v. Cavender Toyota, Inc.*, 330 S.W.3d 648, 652–53 (Tex.App.-San Antonio 2010, no pet.) (finding statutory language explicitly stating that county assessor-collector "is liable" for failing to comply with statutory obligations under chapter 501 of Texas Transportation Code addressed assessor-collector's liability rather than her immunity from suit).

In light of our analysis, we conclude that sections 117.081 and 117.083 do not waive appellees' immunity from suit. Having concluded that these provisions do not waive immunity from suit, we need not consider whether Scarver has adequately alleged a violation of these sections. *See* Tex.R.App. P. 47.1 (requiring appellate court opinions to be as brief as practicable but to address every issue raised and necessary to final disposition of appeal). We overrule Scarver's issue.

### IV.   Conclusion

We affirm the judgment of the trial court.