02-11-005-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00005-CV

 

 


 
 
 Texas Real Estate Commission
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Joyce I. Bayless
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 141st
District Court OF Tarrant COUNTY

----------

OPINION

----------

I.  Introduction

          Appellant
Texas Real Estate Commission (TREC) appeals an order directing it to pay
$50,000 from the Real Estate Recovery Trust Account (the “trust account”) to
Appellee Joyce I. Bayless.  The primary issue that we address in this appeal is
whether the two-year limitations period in occupations code section 1101.605(a)
applies to an action against a real estate license holder upon which an
uncollectible judgment is based or to a verified claim for payment from the
trust account of the unpaid amount of the uncollectible judgment.  See
Tex. Occ. Code Ann. § 1101.605(a) (West 2004).  We hold that section
1101.605(a) applies to an action against a real estate license holder upon
which an uncollectible judgment is based.  Therefore, we will reverse and render.

II.  Background

          Bayless
filed her original petition against Jack Erwin Bunton in May 2008.  In an
amended pleading, she alleged that in May 2006, TREC determined that Bunton was
guilty of engaging in “misrepresentation or dishonest or fraudulent action when
selling real property in his own name in violation of . . . §1101.652(a)(3)
of the Texas Occupations Code.”  TREC revoked Bunton’s real estate broker license
and made supporting fact findings, including the following:  on or
about August 29, 2002, Bunton executed a contract for the sale of real property
to Bayless; Bunton made false representations to Bayless that there were no liens
against the property; Bayless made a $30,000 down payment on the
seller-financed purchase of the property, took possession of the property, and
made monthly payments to Bunton; Bayless began receiving notices of foreclosure
of the property from a financial institution that held an undisclosed mortgage
on the property; Bunton did not make any payments on the undisclosed mortgage
and retained all of the funds that Bayless paid to him; Bayless agreed to pay
the financial institution an additional $30,000, but the property was foreclosed
on in February 2004; and Bunton’s misrepresentations, dishonesty, and fraud caused
Bayless to lose $37,524.66.  Bayless alleged claims against Bunton for common
law and statutory fraud and for violations of occupations code section
1101.652(a)(3) and the DTPA, and she sought damages of $37,524.66 and
attorney’s fees.

          Bayless
moved for summary judgment on her claims against Bunton and on Bunton’s counterclaims
against her.  The trial court granted Bayless’s motions for summary judgment
and in April 2010, awarded her damages in the amount of $37,534.66; exemplary
damages in the amount of $5,000; attorney’s fees in the amount of $10,000; and
prejudgment and postjudgment interest.

          Approximately
five months later, in September 2010, Bayless filed a claim and application for
an order directing a payment from the trust account.  She alleged that she had given
notice of the claim to TREC, that she had obtained a final judgment against
Bunton based on his commission of acts constituting a violation of occupations
code section 1101.652(a)(3), that a writ of execution was issued but returned
nulla bona, and that she had caused to be issued an abstract of judgment
and perfected a judgment lien.  Bayless prayed that the trial court enter an
order directing TREC to pay to her “an amount found to be payable on the claim”
from the trust account.

          TREC
objected to Bayless’s application for an order directing a payment out of the
trust account, arguing that the claim is time-barred under occupations code
section 1101.605(a), which, according to TREC, required Bayless to bring her
underlying suit against Bunton no later than two years from February 2004, the date
of the subject property’s foreclosure.  TREC argued that Bayless could not
recover from the trust account because the limitations period had expired when she
sued Bunton more than two years after February 2004.  After a hearing, the
trial court denied TREC’s challenge and ordered it to pay Bayless $50,000 from
the trust account.  TREC appeals.

III. 
Section 1101.605(a)

 

          In
its only issue, TREC argues that the two-year limitations period in section
1101.605(a) applies to an action against a real estate license holder upon
which an uncollectible judgment is based.  Therefore, TREC contends that the
trial court erred by ordering TREC to pay Bayless $50,000 from the trust
account because the limitations period expired several years before Bayless
brought suit against Bunton in May 2008.  In addition to several other
arguments, Bayless replies that section 1101.605(a) instead applies to a claim
against the trust account for payment of the unpaid amount of an uncollectible
judgment and that the limitations period accrues once (1) a final judgment
in the underlying suit is entered, (2) a writ of execution is returned nulla bona,
and (3) a judgment lien is perfected, as section 1101.606(a) contemplates.
 Because she sought payment from the trust account within two years of meeting section
1101.606(a)’s claim-filing prerequisites, Bayless contends that the trial court
did not err by ordering a payment from the trust account.  TREC confirmed at
the hearing on Bayless’s application that its sole challenge to her claim was
its limitations argument.

          A.      Standard
of Review and Statutory Construction

          Statutory
construction is a question of law that we review de novo.  Tex. Dep’t
of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002).  In construing a
statute, our primary objective is to determine and give effect to the legislature’s
intent, which we do by looking to the plain and common meaning of the statute’s
words, unless such a construction leads to an absurd result.  Harris Cnty.
Hosp. Dist. v. Tomball Reg’l Hosp., 283 S.W.3d 838, 842 (Tex. 2009); City
of Rockwall v. Hughes, 246 S.W.3d 621, 625–26 (Tex. 2008).  Disputed
provisions of a statute are to be considered in context, not in isolation.  Harris
Cnty. Hosp. Dist., 283 S.W.3d at 842.  Further, if a statute is unambiguous,
rules of construction or other extrinsic aids cannot be used to create
ambiguity:

          There are
sound reasons we begin with the plain language of a statute before resorting to
rules of construction.  For one, it is a fair assumption that the Legislature
tries to say what it means, and therefore the words it chooses should be the
surest guide to legislative intent.  Also, ordinary citizens should be able to
rely on the plain language of a statute to mean what it says.  Moreover, when
we stray from the plain language of a statute, we risk encroaching on the
Legislature’s function to decide what the law should be.

Fitzgerald
v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 866 (Tex.
1999) (citations omitted); see Alex Sheshunoff Mgmt. Servs., L.P. v.
Johnson, 209 S.W.3d 644, 652 n.4 (Tex. 2006) (stating that “[i]f the text
is unambiguous, we must take the Legislature at its word and not rummage around
in legislative minutiae”).

          B.      The
Trust Account

          The
Real Estate License Act (the RELA) is found in chapter 1101 of the occupations
code.  See Tex. Occ. Code Ann. §§ 1101.001–.806 (West 2004 &
Supp. 2010).  Its overall purpose is “to eliminate or reduce fraud that might
be occasioned on the public by unlicensed, unscrupulous, or unqualified
persons,” and it contains seventeen subchapters addressing matters ranging from
the meaning of “broker” to the liabilities of a broker.  Henry S. Miller Co.
v. Treo Enters., 585 S.W.2d 674, 675–76 (Tex. 1979); see Tex. Occ.
Code Ann. §§ 1101.001, .801–.806.

          TREC
is charged with the administration and enforcement of the RELA.  See Tex.
Real Estate Comm’n v. Nagle, 767 S.W.2d 691, 693 (Tex. 1989); see also
Tex. Occ. Code Ann. § 1101.151.  Among other responsibilities, TREC must
“maintain a real estate recovery trust account.”  Tex. Occ. Code Ann. § 1101.601(a). 
The purpose for the trust account, which is funded in part by license and
certificate of registration fees, “is to reimburse persons who have been
damaged by certain acts of a real estate broker or salesman, but who cannot
collect their damages from the broker.”  Nagle, 767 S.W.2d at 693; Tex.
Occ. Code Ann. § 1101.603(a)–(c).

          Under
subchapter M of the RELA, “an aggrieved person who obtains a court
judgment against a license or certificate holder for an act described by
Section 1101.602[[1]] may, after final
judgment is entered, execution returned nulla bona, and a judgment lien
perfected, file a verified claim in the court that entered the judgment.”  Tex.
Occ. Code Ann. § 1101.606(a).  After twenty days’ notice of the “claim” to
TREC and the judgment debtor, the aggrieved person “may apply to the court that
entered the judgment for an order for payment from the trust account.”  Id.
§ 1101.606(b).  A hearing is conducted on the application, and TREC may
“appear at the hearing, defend the action, or take any other action the
commission considers appropriate,” but it may do so only to “ensure compliance
with the requirements for recovery under this subchapter” or to “protect the
trust account from spurious or unjust claims.”  Id. § 1101.608(a),
(b).  The trial court “shall order” TREC “to pay from the trust account the
amount the court finds payable on the claim” if the court is satisfied about
the matters detailed in section 1101.609(1) and (2).  Id. § 1101.609.

C.      Section
1101.605(a) Applies to an Underlying Action Upon Which an Uncollectible
Judgment is Based

          Section
1101.605(a), titled in part, “Deadline for Action,” provides that “[a]n action
for a judgment that may result in an order for payment from the trust account
may not be brought after the second anniversary of the date the cause of action
accrues.”  Id. § 1101.605(a).  When we consider the words that the
legislature chose there in light of the language used in other statutes
contained in subchapter M of the RELA, as we must, we observe (1) that
the legislature consistently used the term “judgment” to refer to the final
judgment that an aggrieved person must obtain against a license or certificate holder
before filing a claim against the trust account, (2) that the legislature
used the term “claim” to refer to a verified claim that an aggrieved person
must file after a final judgment is entered in order to recover from the trust
account, and (3) that the legislature used the term “order” to refer to
the order for payment from the trust account that an aggrieved person must apply
for after giving notice to TREC and the judgment debtor of the claim against
the trust account.  See id. §§ 1101.606, .607, .609, .610, .611; see
also TGS-NOPEC Geophysical Co. v. Combs, 340 S.W.3d 432, 441 (Tex.
2011) (“It is a fundamental principle of statutory construction and indeed of
language itself that words’ meanings cannot be determined in isolation but must
be drawn from the context in which they are used.”).  The legislature did not
substitute the term “claim” for the term “judgment” in any part of subchapter M,
nor did the legislature use the term “judgment” in any context other than to
refer to the final judgment that an aggrieved person must obtain against a
license or certificate holder before filing a claim against the trust account. 
The legislature also did not use the term “order” in any context other than to
refer to the order for payment from the trust account that an aggrieved person
must apply for after giving notice to TREC and the judgment debtor of the claim
against the trust account.  Therefore, we must construe the term “judgment” as
it is used in section 1101.605(a) to refer to a final judgment that an
aggrieved person must obtain against a license or certificate holder before
filing a claim against and application to recover from the trust account.

          Another
operative term in section 1101.605(a) is “action.”  Section 1101.608(c) also uses
the term “action,” and it provides that “[t]he commission may relitigate in the
hearing any material and relevant issue that was determined in the action
that resulted in the judgment in favor of the aggrieved person.”  Tex.
Occ. Code Ann. § 1101.608(c) (emphasis added).  The legislature thus used
the term “action” in section 1101.608(c) to refer to the underlying cause of
action against the license or certificate holder that resulted in the final
judgment in favor of the aggrieved person.  The legislature used the term
“action” twice in section 1101.605(a), once even in conjunction with the term
“judgment.”  Id. § 1101.605(a).  We therefore construe the term
“action” in section 1101.605(a) to refer to the underlying cause of action
against the license or certificate holder that resulted in the final judgment
in favor of the aggrieved person.

          Section
1101.605(a) goes on to describe the term “judgment” as one “that may result in
an order for payment from the trust account.”  Id.  Sections 1101.606
and 1101.607 reveal exactly what the legislature intended by including such a
description.  Under those statutes, a judgment “that may result in an order for
payment from the trust account” is one in which a person (1) obtains a final
judgment against a license or certificate holder for an act described by
section 1101.602; (2) files a claim against the trust account after the
execution is returned nulla bona and a judgment lien is perfected;
(3) applies for an order for payment from the trust account after notice
to TREC and the judgment debtor; and (4) attempts to show at the hearing
on the application the matters described by section 1101.607 to the
satisfaction of the trial court.  See id. §§ 1101.606(a), .607,
.609.  There is no reason to speculate about the legislature’s intent when it
described the term “judgment” in section 1101.605(a) as one “that may result in
an order for payment from the trust account.”

          In
addition to the actual words chosen by the legislature, interpreting section
1101.605(a) one way over the other affects the meaning of several other
statutes contained in subchapter M of the RELA.  For example, section
1101.605(b) describes a license or certificate holder as a person “against whom
the action is brought,” but section 1101.606(b) alters that description to
refer to a license or certificate holder as a “judgment debtor.”  Construing
section 1101.605(a) to apply to an action against a real estate license or
certificate holder upon which an uncollectible judgment is based, as TREC
contends, comports with the legislature’s decision to refer to the license or
certificate holder as a person “against whom the action is brought” in section
1101.605(b) because, at that point in time—when “an aggrieved person brings an
action for a judgment that may result in an order for payment from the trust
account” against the license or certificate holder—he is merely a person who
has been sued; there is no judgment entered against him yet.  But after a final
judgment has been obtained, execution has been returned nulla bona, a
judgment lien has been perfected, and an application to recover from the trust
account has been filed, the license or certificate holder is no longer just
someone “against whom the action is brought”; he is instead now a “judgment
debtor.”  The legislature’s decision to implement chronologically varying
descriptions of the license or certificate holder is rendered meaningless if we
construe section 1101.605(a) as applying to a claim against the trust account
for payment of the unpaid amount of an uncollectible judgment, as Bayless
argues.

          Another
result of interpreting section 1101.605(a) one way over the other concerns how
notice is given.  Both subsections (a) and (b) of section 1101.605 contain the
identical language “an action for a judgment that may result in an order for
payment from the trust account.”  Id. § 1101.605(a), (b). 
Therefore, whether we adopt TREC’s proposed construction or Bayless’s proposed
construction of section 1101.605(a), that same construction should be given to
the identical language found in subsection (b).  See Lewis v. Funderburk,
253 S.W.3d 204, 207–08 (Tex. 2008) (holding that legislature’s use of terms
“has not been served” applies equally to cases in which a report has been
served but is inadequate).  Construing section 1101.605(a) to apply to an
action against a real estate license or certificate holder upon which an
uncollectible judgment is based, as TREC contends, means that, under subsection
(b), the license or certificate holder against whom an action is brought must
notify TREC of the action when it is brought—at the outset of the underlying action. 
Id. § 1101.605(b).  Then, under section 1101.606(b), after
obtaining a final judgment, when the aggrieved person files a verified claim
against the trust account, he—not the license or certificate holder—must give
notice of the claim to both TREC and the judgment debtor.  Id. § 1101.606(b). 
Under Bayless’s proposed construction of section 1101.605(a), however, there is
no provision for notice to TREC at the outset of the underlying action, and
both the license or certificate holder and the aggrieved person must give
notice to TREC when a verified claim is filed against the trust account. 
Unlike Bayless’s construction, TREC’s construction of section 1101.605(a) accounts
for notice to TREC at all stages of the litigation contemplated by subchapter M
and does not result in redundant notices of the same claim against the trust
account being given to TREC by both the license or certificate holder and the
aggrieved person.

          In
Williams v. Khalaf, the supreme court cited the predecessor statute of
section 1101.605(a) in a footnote and stated in a parenthetical, “limitations
period of two years for collection from real estate recovery fund.”  802 S.W.2d
651, 654 n.3 (Tex. 1990).  The supreme court, however, did not perform a statutory
construction of the statute, and we decline to consider its statement in the
footnote as binding precedent that the legislature intended section 1101.605(a)
to apply to a claim against the trust account for payment of the unpaid amount
of an uncollectible judgment, to the extent it can be construed as such.

          Bayless
argues that TREC is prohibited from raising a limitations challenge on appeal
because it merely raised a jurisdictional challenge to Bayless’s claim against
the trust account.  TREC filed a pleading challenging Bayless’s right to
recover from the trust account on the ground of limitations.  It is the same
argument that TREC now raises on appeal.  That TREC captioned the pleading a
“plea to the jurisdiction” does not affect the nature of the complaint raised
therein.  See State Bar of Tex. v. Heard, 603 S.W.2d 829, 833 (Tex.
1980) (“We look to the substance of a plea for relief to determine the nature
of the pleading, not merely at the form of title given to it.”).

          Bayless
further argues that TREC’s issue should be overruled because it “failed to
offer any evidence by way of oral testimony, discovery, affidavits, exhibits or
stipulations in support of the affirmative defense of limitations” at the trial
court.  TREC filed a pleading with supporting exhibits challenging Bayless’s
claim against the trust account, and the trial court held a hearing on the
matter, considered TREC’s arguments, and ruled in favor of Bayless.  TREC thus
defended the trust account against Bayless’s claim, as section 1101.608(a)
contemplates.  See Tex. Occ. Code Ann. § 1101.608(a).

          Relying
on occupations code section 1101.608(c), Bayless also argues that TREC’s
limitations challenge must fail because “TREC has no statutory right to re-litigate
an issue that was not decided in the underlying action.”  As noted, section
1101.608(c) provides that “[t]he commission may relitigate in the
hearing any material and relevant issue that was determined in the
action that resulted in the judgment in favor of the aggrieved person.”  Tex.
Occ. Code Ann. § 1101.608(c) (emphasis added).  Bayless seems to contend
that because the limitations argument that TREC now raises on appeal was not
determined during the underlying action against Bunton, then TREC was
prohibited from raising the limitations argument in its challenge to Bayless’s
claim against the trust account.  But section 1101.608(c) merely permits TREC
to relitigate a material and relevant issue that was determined in the action
against the license or certificate holder.  It does not prohibit TREC from
raising matters in response to Bayless’s claim against the trust account if
those matters were not determined in the underlying action against the license
or certificate holder.  Indeed, in Nagel, the supreme court recognized
that “seldom will direct intervention [by TREC] be possible.  [TREC] ordinarily
will be relegated to a post-judgment hearing.”  767 S.W.2d at 694–95.  Prohibiting
TREC from raising an issue in the hearing on Bayless’s application for payment
that was not determined in the action against the license or certificate holder
would deprive TREC of the opportunity to comply with its statutory obligation
under section 1101.608(b).

          Bayless
contends that TREC’s construction of section 1101.605(a) would lead to absurd
results, “thwart the legislative purpose,” and “create financial uncertainty
and chaos” for the trust account.  We do not see that happening.  Construing
section 1101.605(a) to apply to an action against a real estate license or
certificate holder upon which an uncollectible judgment is based provides
uniformity for all claims against a license or certificate holder that may
result in an order for payment from the trust account because it requires that
those claims be brought within two years of the date the actions accrue.  To
the extent Bayless relies on the considerations detailed in government code
section 311.023 to support her construction of section 1101.605(a), “[w]hen a
statute’s language is clear and unambiguous, it is inappropriate to resort to
rules of construction or extrinsic aids to construe the language.”  See City
of Rockwall, 246 S.W.3d at 626; see also Molinet v. Kimbrell,
356 S.W.3d 407, 414 (Tex. 2011).

          Accordingly,
construed in context, the plain and common meaning of the terms used in section
1101.605(a) suggest that the legislature intended for the statute to apply to
an “action” against a real estate license or certificate holder upon which an
uncollectible “judgment” is based.  If the legislature had instead intended for
section 1101.605(a) to apply to a claim against the trust account for payment
of the unpaid amount of an uncollectible judgment and for the limitations
period to accrue once a final judgment in the underlying action is entered, a
writ of execution is returned nulla bona, and a judgment lien is
perfected, then it could have simply stated as much, but it did not, and we
must presume that the legislature chose the words that it used for a purpose,
and we must not engage in a forced or strained construction of the statute.  St.
Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997); Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981) (reasoning
that every word of a statute must be presumed to have been used for a purpose,
and every word excluded from a statute must be presumed to have been excluded
for a purpose).  Because the limitations period to bring “[a]n action for a
judgment that may result in an order for payment from the trust account” expired,
at the latest, several years before Bayless brought suit against Bunton in May
2008, she failed to comply with section 1101.605(a)’s two-year limitations
requirement, and she therefore may not recover from the trust account.  We
sustain TREC’s only issue.

IV.  Conclusion

          We
reverse the trial court’s order directing TREC to pay Bayless $50,000 out of
the trust account and render judgment that Bayless take nothing on her claim
against the trust account.

 

 

BILL MEIER
JUSTICE

 

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

 

DELIVERED: 
April 19, 2012









[1]“An aggrieved person is
entitled to reimbursement from the trust account if a person described by
Section 1101.601 engages in conduct described by Section
1101.652(a)(3) . . . .”  Tex. Occ. Code Ann. § 1101.602. 
Section 1101.652(a)(3) refers to “misrepresentation, dishonesty, or fraud when
selling . . . real property” in the license holder’s own
name.  Id. § 1101.652(a)(3).