# IN THE SUPREME COURT OF TEXAS

No. 14-0776

MIKE MORATH, COMMISSIONER OF EDUCATION, IN HIS OFFICIAL CAPACITY; GLENN HEGAR, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS , IN HIS OFFICIAL CAPACITY; THE TEXAS STATE BOARD OF EDUCATION; AND THE TEXAS EDUCATION AGENCY, APPELLANTS,

v.

THE TEXAS TAXPAYER AND STUDENT FAIRNESS COALITION, ET AL.; CALHOUN COUNTY ISD, ET AL.; EDGEWOOD ISD, ET AL,; FORT BEND ISD, ET AL.; TEXAS CHARTER SCHOOL ASSOCIATION, ET AL.; AND JOYCE COLEMAN, ET AL., APPELLEES

ON DIRECT APPEAL FROM THE
200TH JUDICIAL DISTRICT COURT OF TEXAS

JUSTICE BOYD, joined by JUSTICE LEHRMANN and JUSTICE DEVINE, concurring.

Our decision in this case will no doubt be a great disappointment to many, and perhaps a cause for celebration for others. In light of this Court's extensive and binding precedent, what it should not be is a surprise to anyone. And what it definitely is not is an expression of personal opinions on how Texas *should* fund and operate its public school system. I join the Court's opinion and judgment and write this brief concurrence to emphasize why our Constitution and this Court's precedent require today's result.

The Texas Constitution states:

A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an

1

efficient system of public free schools.

TEX. CONST. art. VII, § 1. Over the past twenty-seven years, this Court has repeatedly and extensively addressed, construed, and applied these words.[1] The arguments the parties raised in those cases required the Court to focus particularly on the phrases "general diffusion of knowledge," "suitable provision," and "efficient system." But in doing so, the Court has repeatedly highlighted one phrase that others seem to often overlook:

"*. . . it shall be the duty of the Legislature . . .*"

These eight powerful words directly affect all of the words surrounding them. More importantly, they affect this Court by precluding us from judicially mandating the "efficient system," "suitable provision," or "general diffusion of knowledge" we may prefer. And most importantly, they affect the members of the Legislature by imposing on them a solemn obligation on which the very "liberties and rights of the people" depend.

Based on the Constitution's language, a "general diffusion of knowledge" is the linchpin for all of the other requirements. Article VII, section 1 makes it "the duty of the Legislature" to ensure a "general diffusion of knowledge"—no more and no less. TEX. CONST. art. VII, § 1. A "general diffusion of knowledge" is the mark on the yardstick that indicates whether the Legislature has made "suitable provision" for an "efficient system" of public schools. *See West Orange–Cove II*, 176 S.W.3d at 785–86. The Legislature, and even individual school districts, may

---

[1] *See Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746 (Tex. 2005) (*West Orange–Cove II*); *W. Orange–Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558 (Tex. 2003) (*West Orange–Cove I*); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717 (Tex. 1995) (*Edgewood IV*); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex. 1992) (*Edgewood III*); *Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491 (Tex. 1991) (*Edgewood II*); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391 (Tex. 1989) (*Edgewood I*).

choose to tax and spend and provide and require more than a "general diffusion of knowledge" requires, *see West Orange–Cove I*, 107 S.W.3d at 581–83; *Edgewood IV*, 917 S.W.2d at 730 & n.9, but they cannot choose to do less. A "general diffusion of knowledge" is the constitutional minimum requirement that is essential to preserving "the liberties and rights of the people."

But what is a "general diffusion of knowledge"? The Constitution does not say. Nor does it say what constitutes "suitable provision" or an "efficient system." Since it is typically this Court's role to construe the Constitution, *see, e.g.*, *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009), we could conceivably assign meanings to these terms that would ensure that Texas has the kind of public school system we think it should have. Conceivably, we could; but constitutionally, we cannot, because:

*". . . it shall be the duty of the Legislature . . ."*

The Court has previously noted that the terms "general diffusion of knowledge," "suitable provision," and "efficient system" are inexact, imprecise, and "import a wide spectrum of considerations." *West Orange–Cove II*, 176 S.W3d at 778; *see also Edgewood I*, 777 S.W.2d at 394 ("[T]hese are admittedly not precise terms . . . ."). We observed long ago that the meaning of these "elastic" terms depends "upon the necessities of changing times or conditions." *Mumme v. Marrs*, 40 S.W.2d 31, 36 (Tex. 1931). By using these elastic and imprecise terms and by expressly placing "the duty" on the Legislature, article VII, section 1 "commits to the Legislature, the most democratic branch of the government, the authority to determine the broad range of policy issues involved in providing for public education." *West Orange–Cove II*, 176 S.W.3d at 778. The terms are intentionally imprecise because "the State's provision for a general diffusion of knowledge

3

must reflect changing times, needs, and public expectations." *Edgewood IV*, 917 S.W.2d at 732 n.14.

Because the standards that these terms set can be met only through fiscal and public policy choices, the Court has held that the Legislature has the primary responsibility to determine what each of these standards require and how best to meet them:

- "The Legislature is entitled to determine what public education is necessary for the constitutionally required '*general diffusion of knowledge*,['] and then to determine the means for providing that education." *West Orange–Cove II*, 176 S.W.3d at 784 (emphasis added).

- "The word '*suitable*,' used in connection with the word 'provision' . . . clearly leaves to the [L]egislature the right *to determine what is suitable*, and its determination will not be reviewed by the courts if the act has a real relation to the subject and object of the Constitution." *Mumme*, 40 S.W.2d at 36 (emphases added).

- "The Constitution gives to the Legislature . . . the 'primary responsibility to decide *how best to achieve an efficient system*.'" *Edgewood IV*, 917 S.W.2d at 747 (emphasis added) (quoting *Edgewood I*, 777 S.W.2d at 399).

In other words, the Constitution allows the Legislature "a large measure of discretion on two levels"—both to determine *what* the constitutional terms mean and require, and then to determine *how* to best meet those requirements. *West Orange–Cove II*, 176 S.W.3d at 784. In short, the Legislature "has broad discretion to make the myriad policy decisions concerning education." *Edgewood IV*, 917 S.W.2d at 730 n.8.

Despite the Constitution's express assignment of "the duty" to the Legislature, it does "provide a standard by which this court must, when called upon to do so, measure the constitutionality of the legislature's actions." *Edgewood I*, 777 S.W.2d at 394. However, our role "is limited to ensuring that the constitutional standards are met. We do not prescribe *how* the standards should be met." *West Orange–Cove II*, 176 S.W.3d at 753. Instead, we must defer to the

4

Legislature and uphold its policy choices unless those choices are "arbitrary" and "unreasonable." As the Court explained long ago,

> Since the Legislature has the mandatory duty to make suitable provision for the support and maintenance of an efficient system of public free schools, and has the power to pass any law relative thereto, not prohibited by the Constitution, it necessarily follows that it has a choice in the selection of methods by which the object of the organic law may be effectuated. The Legislature alone is to judge what means are necessary and appropriate for a purpose which the Constitution makes legitimate. The legislative determination of the methods, restrictions, and regulations is final, except when so arbitrary as to be violative of the constitutional rights of the citizen.

*Mumme*, 40 S.W.2d at 36.

Under this standard, the Court must defer to the Legislature's primary role and uphold the Legislature's decisions unless they are arbitrary—that is, "taken without reference to guiding rules or principles"—and unreasonable. *West Orange–Cove II*, 176 S.W.3d at 784. "If the Legislature's choices are informed by guiding rules and principles properly related to public education—that is, if the choices are not arbitrary—then the system does not violate the constitutional provision." *Id.* at 785. Under our Constitution, the Legislature is free to make whatever changes it determines are appropriate in light of "changing times, needs, and public expectations." *Edgewood IV*, 917 S.W.2d at 732 n.14. It can change the required curriculum; it can replace the TAAS test with the TAKS test and the TAKS test with the STAAR test; it can change the scores required to "pass" whatever test it has settled on; it can change the accreditation standards and adjustment factors and remedial measures; and it can even reduce funding by $4 billion. We may not like what the Legislature does, but we can only intervene as a Court if the Legislature's decisions are "arbitrary" and "unreasonable" in light of its "duty" to ensure a "general diffusion of knowledge."

The Legislature has never expressly defined or described a "general diffusion of knowledge." Instead, it has only implicitly set that bar by statutorily describing the system it has chosen to establish, support, and maintain. The Court has thus looked to the statutes the Legislature has enacted for guidance. In *Edgewood IV*, for example, the Court concluded that, in Chapter 35 of the Texas Education Code, "the Legislature defines the contours of its constitutional duty to provide a 'general diffusion of knowledge' by articulating seven public education goals." *Edgewood IV*, 917 S.W.2d at 728. And more recently, the Court equated a "general diffusion of knowledge" with an "accredited education" because the Legislature requires school districts to provide the latter as the means to achieve the former. *West Orange–Cove I*, 107 S.W.3d at 581. Consistent with the Legislature's statutory scheme, the system "need not operate perfectly; it is adequate if districts are *reasonably* able to provide their students the access and opportunity" the system is designed to provide. *West Orange–Cove II*, 176 S.W.3d at 787.

The Court has not previously concluded, and does not conclude today, that the Legislature's decisions in the school-finance arena have been wise or desirable. All the Court concludes today is that they have not been so arbitrary and unreasonable as to fall below the minimum constitutional standards. The Court's sole job—indeed, its constitutionally limited authority—is to answer that question. Whether we believe the state should spend more or less on public education is irrelevant to the task before us. Whether we think the state should raise or lower accreditation standards, increase or decrease class sizes, or require more or less testing, is immaterial to the decision the Constitution and our precedent permit us to make today. We may have our personal views on those issues, but when it comes to making those kinds of choices,

"*. . . it shall be the duty of the Legislature . . .*"

6

Deciding to provide a "better" system, and how much "better" that system should be, requires a balancing of costs and benefits that the Constitution leaves solely to the Legislature. Our sole authority is to determine whether the Legislature's decisions have been arbitrary and unreasonable, and for the reasons the Court explains, I agree they have not. For those who are disappointed, their remedy "lies in the Legislature and thus in the privilege and duty that all Texans have to elect the legislators who will implement the policy choices they desire." *Ante* at ___.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: