# Supreme Court of Texas

No. 25-0917

Patricia Oramas,
*Petitioner*

v.

UTMB Health (Hospital) at Galveston,
*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE YOUNG, with whom Justice Devine and Justice Busby join, concurring in the denial of the petition for review.

Important public-policy reasons animate the legislature's decision to impose daunting substantive and procedural requirements on plaintiffs who pursue medical-liability claims. Those requirements deter frivolous or weak claims and expedite preliminary screening of claims that are filed. Deterring weak claims, of course, entails imposing burdens on strong claims, too. The legislature must strike that balance. In doing so, cases like this one illustrate one consideration that should be added to the scale: access to justice.

This sad case comes to us from a pro se petitioner, Patricia Oramas. In her petition, Mrs. Oramas alleges that her husband, Henry, died while in the care of the University of Texas Medical Branch at Galveston. Mrs.

Oramas tells us that, despite his serious condition, he was left unattended and found disconnected from his oxygen, lying in a pool of blood. According to Mrs. Oramas, Henry was administered several rounds of a drug that is dangerous for patients with kidney problems even though he was known to have serious kidney problems.

All courts must assume at this preliminary stage that Mrs. Oramas's allegations are true. At trial, she would have to prove them, and if she could, she would have a powerful medical-negligence claim. The hospital may have compelling defenses. But I agree with the thoughtful court of appeals' opinion, which "reject[ed] any suggestion that Oramas's case is in fact frivolous," even as it agreed "that the trial court had no choice but to grant the motion to dismiss." No. 01-24-00399-CV, 2025 WL 2446013, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025).

In other words, we will never know the relative merits of Mrs. Oramas's case because it will not proceed at all, much less to trial. That is because the Texas Medical Liability Act imposes a 120-day deadline for a plaintiff to serve the defendant with a compliant expert report (and the expert's professional curriculum vitae, so that the expert's qualifications to opine on the defendant's alleged negligence can be tested). *See* Tex. Civ. Prac. & Rem. Code § 74.351(a), (b)(2). Mrs. Oramas missed that deadline. The hospital invoked the statute and moved to dismiss Mrs. Oramas's case. The trial court eventually granted the motion, and the court of appeals affirmed. 2025 WL 2446013, at *2.

Neither court had any other choice. They acknowledged Mrs. Oramas's difficulties, but their hands were tied—they could not, as the court of appeals put it, "rewrite a valid law passed by the people's representatives."

2

*Id.* at *4. "The law at issue here leaves no room for judges to create exceptions to make the law more flexible or less harsh." *Id.* So Mrs. Oramas's case was dismissed with prejudice before it could really begin.

In one sense, this outcome is not all that surprising. Dismissals of healthcare-liability claims for untimely or inadequate expert reports are routine. Nor is there anything untoward about the requirement itself. No orderly system of justice can survive without rules that must be followed, and rules are not *really* rules unless noncompliance entails some consequences. All procedural requirements have the potential to derail claims before they are considered on their merits. The more burdensome the requirement, the more cases it will affect.

What the rules are, and how severe the consequence for their violation, generally flow from the objectives that make the rules necessary in the first place. It has long been established that the legislature consciously demanded expeditious expert reports to redress what it regarded as a harm to all Texans when, under a prior freewheeling approach to medical-negligence claims, too many frivolous cases led to skyrocketing costs and a shortage of access to medical services. Just as the courts have inherent authority to manage their dockets efficiently to provide fair, impartial, and swift justice and to prevent parties from abusing the judicial system, the legislature has the authority to impose various requirements on litigants predicated on its policy judgments about the State's interests.

Absent a constitutional impediment, the courts will enforce whatever requirements the legislature enacts into positive law. Inherent in lawmaking is that legislatively drawn lines will leave difficult cases on

either side. Applying laws even when they generate tough outcomes is likewise essential to the rule of law. Certainty and predictability flow from the public's (and the government's) recognition that the courts can articulate with clarity what the law is and that the courts will then follow the law.

All of this, again, is ordinary, not revelatory. What makes this case notable enough for the court of appeals to write a detailed opinion and for me to write this concurrence is *why* Mrs. Oramas failed to comply with the statutory requirement. Mrs. Oramas explains that she did her very best to find a lawyer to help her but that none would take the case. She identified three considerations that help explain why lawyers might rationally decline cases even when, as here, the claims are not frivolous: (1) the hospital at issue is a state entity entitled to sovereign or governmental immunity, *see Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009), which injects complex issues into litigation even when a waiver of immunity is alleged; (2) Henry was hospitalized for COVID-19, so the hospital's potential liability is limited to claims for gross or willful negligence, Tex. Civ. Prac. & Rem. Code § 74.155(b), which is of course harder to prove; and (3) even if she were able to clear the immunity hurdle and establish gross or willful negligence, her potential damages would be capped at $250,000, *id.* § 74.301(b), which makes an already-difficult case even less economical to pursue. Indeed, an overarching fourth consideration is that all medical-liability claims are subject to the statute's many substantive and procedural hurdles, which make such cases more expensive and challenging.

Despite these daunting circumstances, Mrs. Oramas proceeded alone.

4

She says she first learned of § 74.351's expert-report and CV requirement when the hospital filed a motion to dismiss on the ground that she had missed the deadline. She scrambled to find an expert willing to work with her—one who was adequately qualified and who could examine all the records that she had obtained to be able to prepare a report that would satisfy the statute. She found such an expert more quickly than one might have imagined, and she served the resulting report nineteen days after the hospital's motion and about two months after it was due under § 74.351.

At the hearing on the motion to dismiss, Mrs. Oramas expressed understandable frustration that the hospital's lawyer met with her *after* the TMLA deadline had passed to agree on a scheduling order—an order that provided a deadline for expert designation months in the future—only to file a motion to dismiss based on the TMLA deadline a few weeks later. To someone unfamiliar with the TLMA's particular expert-report deadline, a scheduling order's standard deadline for expert designation and reports would seem misleading at best. About a month after the hearing, the trial court granted the hospital's motion to dismiss. I agree with the court of appeals that the statute required this result due to "the undeniable reality . . . that the deadline was not met." 2025 WL 2446013, at *1.

As the lower courts recognized, we judges have no authority to do anything but follow clear statutory mandates as long as those mandates are constitutional. As the court of appeals put it, "[i]f the trial court had had a choice, it may have allowed Oramas to have her day in court before a jury of her peers." *Id.* at *3. But it did not get to choose.

The legislature, however, always has the power to reconsider the lines it has drawn or to draw new lines to address new circumstances. One

such circumstance that might be relevant is *why* a plaintiff forfeits a determination on the merits. As the court of appeals described at some length in rejecting the hospital's request to strike Mrs. Oramas's briefs, this Court has a marked preference for deciding cases on the merits rather than on procedural technicalities. *Id.* at \*2. That preference, of course, must yield to a clear statutory mandate. But I hope the legislature agrees that, as a general matter, it is better for a citizen of Texas—at least one operating in good faith—to lose a case after a court hears her on the merits than to lose because of an inability to comply with a technical requirement.

I do not suggest that early dismissal would not still be entirely sound in many cases. For example, if a procedural default is based on a plaintiff's lack of diligence in even *trying* to find a lawyer or expert, it likely reflects the plaintiff's own assessment that the case is not worth pursuing too hard. That circumstance is not a bad proxy for the merits, so dismissal after a lackluster effort screens out the very sort of case that the legislature seeks to discourage. But what about when the plaintiff is scrambling to do her very best? It seems quite different to tell her that a court will not even listen to her strenuous efforts to seek justice for her husband's death—that she must lose without being heard even if everything she alleges is true and even if the law would strongly support her claim if she had satisfied its procedural requirements.

Of course, *one* reason a plaintiff may not obtain representation is that every lawyer who sees the case considers it frivolous. But the court of appeals recognized (and I agree) that Mrs. Oramas's case was *not* frivolous. *Id.* at \*4. Her ability to get an expert report once she realized she needed one is further indication that the claim, however it would ultimately be

6

resolved if it went to trial, had some merit. It seems instead likely that the potential payout simply did not entice any of the attorneys from which Mrs. Oramas sought help for the reasons I described above. This case does not reflect sloth or a lack of diligence; it reflects a lack of access to capable professional assistance in navigating an incredibly complex legal regime. If Mrs. Oramas's failure to follow all the procedural demands flows from a demonstrable inability to obtain legal assistance despite her exertion—and if her inability to obtain legal assistance flows from lawyers' collective assessment that the statutory regime makes it economically unsound to take her case even if it may have merit—then the legislature *may* conclude that some limited exception to the expert-report deadline is warranted.

Whether such relief is possible or desirable is a question not for the courts but for the legislature. I write today not to advocate any particular change, or indeed to advocate that there be any change at all. Rather, I write to confirm my own perception that serious access-to-justice problems may be preventing citizens from pursuing their substantial rights because of their inability to find counsel. When a law is as unusually complex and demanding as the TMLA, a pro se plaintiff is almost destined to failure, no matter the merits.

In this case, though, Mrs. Oramas performed far better than expected. She failed to discover the expert-report requirement until it was too late. But once made aware of it, she managed—amazingly, it seems to me—to obtain one in short order. Without significantly prejudicing the rights of defendants or unraveling the rigors of the current law, it might be possible for a pro se plaintiff facing a motion to dismiss for noncompliance with the expert-report requirement to receive an additional period of time

7

to secure counsel or at least an expert. What if this escape hatch incentivizes plaintiffs to proceed pro se? Perhaps the extra time might be conditioned on a judge's acceptance of the plaintiff's assertion that she has diligently sought in good faith to find counsel but has been unsuccessful. If that is not enough, perhaps the extra time would require that any eventual recovery be reduced by some percentage, which would further diminish any improper dilatory incentives and encourage alacrity.

Perhaps there are other ways to address the problem. Perhaps the legislature will conclude that it is a problem but that any solution would cause more harm than good. Perhaps it will conclude that someone else should solve the problem—that the bar of Texas should do more to serve the needs of our fellow citizens even if doing so is not as lucrative as taking other cases. Perhaps the legislature will conclude that there is in fact no real problem and that the status quo is working fine.

As it stands today, however, the statute leaves no doubt about the legal result here. Claims must be dismissed with prejudice when a plaintiff fails to serve the defendant with an expert report and curriculum vitae within 120 days of the defendant's answer. While I find it entirely understandable how Mrs. Oramas missed this deadline, and while I have great sympathy for her loss of her husband and for her desire for vindication within the legal system, the lower courts correctly applied the law as written. I therefore concur in the Court's denial of her petition for review.

Evan A. Young
Justice

**OPINION FILED:** June 19, 2026

8